**Larry McCLOUD, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2008–SC–000263–MR.

Supreme Court of Kentucky.

June 25, 2009.

Angela Marie Rea, Louisville Metro Public Defender, James David Niehaus, Deputy Appellate Defender, Office of the Louisville Metro Public Defender, Louisville, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Kenneth Wayne Riggs, Assistant Attorney General, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

Larry McCloud appeals as a matter of

right[1] from a circuit court judgment imposing a twenty-five year sentence, raising several issues. He argues that the trial court erred by (1) denying his motions to suppress both the search of his person and the search of a Grand Prix; (2) failing to suppress his statements regarding ownership of items found in the Grand Prix because his constitutional rights were violated when Royse interrogated him without first adequately informing him of his rights; (3) permitting a detective to offer opinion testimony regarding the drug trade; (4) improperly orally instructing the jury to find him guilty of the trafficking in a controlled substance while in possession of a firearm charge; and (5) denying a directed verdict on the firearm enhancements to the trafficking in a controlled substance, trafficking in marijuana, and possession of drug paraphernalia charges. We disagree with all of McCloud's arguments and, thus, affirm.

## I. FACTUAL AND PROCEDURAL HISTORY.

Officer Brian Royse, along with other officers, was in an unmarked van performing undercover surveillance in a shopping center when he noticed a white Ford Bronco pull into a parking space near them. Royse and the other officers watched a female leave the Bronco, go to a nearby payphone and make a call, return to the Bronco, and again go to the payphone to make a call. Shortly after the second call, a red Pontiac Grand Prix parked in a spot between the officers' van and the Bronco. Royse recognized the Grand Prix from prior arrests of its owner, who was not in the vehicle on this day. The female then went from the Bronco to the passenger seat of the Grand Prix.

When the female was in the Grand Prix, Royse saw the Grand Prix's driver holding in his hand what appeared to be a marble-sized piece of crack cocaine. Royse then pulled the van into a position that blocked the Grand Prix and the Bronco. The officers approached the Grand Prix; and Royse ordered the Grand Prix's driver, who turned out to be the Appellant, Larry McCloud, to exit the vehicle. When McCloud exited, Royse noticed what he believed to be a piece of crack cocaine fall from McCloud's waist area. Royse placed McCloud in custody and administered *Miranda*[2] warnings. Royse searched McCloud and found what appeared to be crack cocaine in McCloud's front pocket and what Royse believed were both powder cocaine and crack cocaine in McCloud's baseball cap.

After searching McCloud, Royse searched the Grand Prix. Under the driver's seat of the Grand Prix, Royse found a loaded handgun. In the back seat, Royse found scales and what he suspected to be marijuana and powder cocaine in, ironically, a duffle bag bearing an anti-drug slogan. When Royse asked McCloud if the duffle bag was his, McCloud answered in the affirmative. Another digital scale was found in the car. A small personal safe containing $6,450 was also found in the car. Royse asked McCloud if the safe was his, to which McCloud answered affirmatively, stating that the safe contained his personal papers.

McCloud was indicted for trafficking in a controlled substance while in possession of a firearm, trafficking in marijuana while in possession of a firearm, possession of a handgun by a convicted felon, possession of drug paraphernalia while in possession

---

1. Ky. Const. § 110(2)(b).

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

of a firearm, carrying a concealed deadly weapon, and being a persistent felony offender in the first degree (PFO 1). McCloud's motions to suppress were denied; and the charges were submitted to the jury (except for the felon in possession of a handgun charge, which was severed). McCloud was found guilty of trafficking while in possession of a firearm offenses, possession of drug paraphernalia while in possession of a firearm, and carrying a concealed deadly weapon. McCloud then entered into a sentencing agreement with the Commonwealth that resulted in an aggregate, PFO 1–enhanced twenty-five year sentence.[3]

## II. ANALYSIS.

### A. The Motion to Suppress was Properly Denied.

■ McCloud makes a three-pronged suppression argument. First, he contends the trial court erred by finding he lacked standing to contest the search of the Grand Prix. Second, he contends the trial court should have suppressed the search of his person because Royse lacked probable cause for the underlying arrest. Finally, he contends the trial court should have granted the motion to suppress due to Royse's alleged failure to inform him of his

Miranda rights. We conclude the arrest was valid because it was based upon probable cause. And the searches of McCloud's person and the Grand Prix were permissible searches incident to arrest. So we find it unnecessary to resolve the so-called standing issue.[4] We also reject McCloud's Miranda-related argument.

■ Motions to suppress are governed by Kentucky Rules of Criminal Procedure (RCr) 9.78, which provides that a court presented with a motion to suppress "shall conduct an evidentiary hearing outside the presence of the jury and at the conclusion thereof shall enter into the record findings resolving the essential issues of fact raised by the motion or objection and necessary to support the ruling." Upon appellate review, the trial court's findings of fact are "conclusive" if they are "supported by substantial evidence...."[5] "Using those facts, the reviewing court then conducts a de novo review of the trial court's application of the law to those facts to determine whether the decision is correct as a matter of law."[6]

■ All warrantless searches are unreasonable unless the search falls within an exception to the warrant requirement.[7]

3. By agreement, the possession of a handgun by a convicted felon charge was dismissed without prejudice.

4. The concept of standing is a misnomer for Fourth Amendment analysis. Minnesota v. Carter, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) ("[I]n determining whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, the definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.") (internal quotation marks omitted). More properly, a court must determine whether a defendant, such as McCloud, "had an actual, subjective expectation of privacy, and second, whether that ex-

pectation was a legitimate, objectively reasonable expectation." United States v. Smith, 263 F.3d 571, 582 (6th Cir.2001).

5. RCr 9.78.

6. Commonwealth v. Jones, 217 S.W.3d 190, 193 (Ky.2006).

7. See, e.g., Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (holding that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.") (footnote omitted).

Among the recognized exceptions to the warrant requirement is a search incident to arrest.[8] Under the search incident to arrest exception, an officer is permitted to search the person arrested and the area within the arrestee's immediate control.[9] In the context of automobiles, it has been held that once the driver is validly arrested, the police have the authorization to search the entire passenger compartment.[10]

■ Although the Supreme Court recently limited the broad scope of this authority in *Arizona v. Gant*,[11] we do not believe *Gant* affects the case at hand. Under *Gant*, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense

of arrest."[12] Otherwise, "a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies."[13] In the case at hand, however, it was reasonable for Royse to believe that McCloud's vehicle contained evidence of the offense of arrest (*i.e.*, possession or trafficking in drugs).[14] Therefore, if McCloud's arrest was valid, Royse's search of McCloud and the Grand Prix were both permissible.

■ A police officer in Kentucky is statutorily authorized to conduct a warrantless arrest if the officer either observes the arrestee commit a felony or misdemeanor in the officer's presence or when the officer has probable cause to believe the arrestee has committed a felony.[15] "[P]robable cause for arrest involves

8. *Rainey v. Commonwealth*, 197 S.W.3d 89, 92 (Ky.2006) ("A search incident to an arrest is an exception to the general rule requiring a warrant prior to searches and seizures pursuant to the Fourth Amendment of the United States Constitution and applicable to the states through the Due Process Clause of the Fourteenth Amendment.").

9. *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) ("When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule.... There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.").

10. *Thornton v. United States*, 541 U.S. 615, 623, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) ("Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment.").

11. ─── U.S. ───, 129 S.Ct. 1710, 173 L.Ed.2d 485 (April 21, 2009).

12. *Gant*, 129 S.Ct. at 1723.

13. *Id.* at 1723–24.

14. *Id.* at 1714 ("[W]e also conclude that circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle.").

15. Kentucky Revised Statutes (KRS) 431.005("(1) A peace officer may make an arrest: (a) In obedience to a warrant; or (b) Without a warrant when a felony is committed in his presence; or (c) Without a warrant when he has probable cause to believe that the person being arrested has committed a felony; or (d) Without a warrant when a

reasonable grounds for the belief that the suspect has committed, is committing, or is about to commit an offense." [16]

In the case at hand, Royse, who was experienced in narcotics recognition and interdiction, observed McCloud holding what Royse believed, based upon his experience and training, to be crack cocaine. Cocaine is a Schedule II controlled substance.[17] Unauthorized possession of a Schedule I or Schedule II narcotic drug is a felony offense.[18] So Royse had probable cause to believe that McCloud had committed a felony offense in Royse's presence, meaning that he had probable cause to arrest McCloud. McCloud's argument that the officers lacked probable cause for an arrest because they had not witnessed an actual drug transaction between McCloud and the female in the passenger seat is without merit because Royse had probable cause to arrest McCloud on a felony offense even before any monetary transaction occurred.

Because the arrest was permissible, the later searches of McCloud's person and the Grand Prix, which flowed naturally and permissibly from the probable cause-supported arrest of McCloud, were likewise constitutionally permissible. So the trial court did not err in denying McCloud's motions to suppress either the search of his person or the search of the Grand Prix.[19] Because it is not necessary

for the resolution of the case at hand, we leave for another day the question of whether someone driving another person's vehicle may properly contest a search of that vehicle when there is no direct evidence that the arrestee-driver had or lacked the vehicle owner's permission to drive the vehicle.

We also reject McCloud's *Miranda*-based argument regarding the statements he made concerning his ownership of the incriminating safe and duffle bag found in the Grand Prix. The testimony on this topic at the suppression hearing was not extensive. In response to questioning by the Commonwealth, Royse testified that he read McCloud the "standard *Miranda* rights" from a card Royse had in his possession. Royse also responded in the negative when asked by the Commonwealth if McCloud had asked to speak to an attorney, indicated he did not want to speak to Royse, or had made any statements that caused Royse to believe McCloud did not want to talk. McCloud now contends that there was an insufficient record to show that he was informed of his full panoply of *Miranda* rights and had knowingly chosen to waive them.

Of course, a defendant subjected to custodial interrogation must be adequately advised of his Fifth Amendment rights, including the right to remain silent and the right to counsel, before statements

misdemeanor, as defined in KRS 431.060, has been committed in his presence. . . ."). *See also Maryland v. Pringle*, 540 U.S. 366, 370, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) ("A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause.").

16. *Baltimore v. Commonwealth*, 119 S.W.3d 532, 538–39 (Ky.App.2003).

17. KRS 218A.070(1)(d).

18. KRS 218A.1415.

19. The fact that the trial court's decision to deny the motion to suppress was based upon different reasoning (*i.e.*, its belief that McCloud lacked standing to contest the search of the Grand Prix) does not alter our result because it is well-settled that an appellate court may affirm a lower court for any reason supported by the record. *See, e.g., Kentucky Farm Bureau Mutual Insurance Co. v. Gray*, 814 S.W.2d 928, 930 (Ky.App.1991).

made by the defendant during that custodial questioning may be used.[20] A defendant may waive those rights, however, provided the waiver is "knowing, voluntary, and intelligent."[21] The Commonwealth bears the burden of showing by a preponderance of the evidence that a defendant waived his *Miranda*-based rights.[22] Although a court "must presume that a defendant did not waive his rights[,]" it is sometimes possible to infer a valid waiver "from the actions and words of the person interrogated."[23]

McCloud asks us to hold that he was not informed of his rights and did not properly waive them. But Royse's testimony that he informed McCloud of the standard *Miranda* rights was unrebutted. Perhaps it would have been better practice for the Commonwealth to ask Royse the specific language he used in informing McCloud of his constitutional rights. Nevertheless, from the record before us, we have a police officer's sworn testimony that he informed a suspect of the suspect's constitutional rights and that the suspect never gave any indication that he wished to invoke those rights. No evidence to the contrary was adduced. Therefore, we have no evidence upon which we could base a conclusion that McCloud was not adequately informed of his rights or that he refused to waive

them. Instead, the opposite is true because the facts and circumstances cause us to infer that McCloud was adequately informed of his rights and chose to waive them. So the trial court did not err in refusing to suppress McCloud's statements regarding his ownership of the materials discovered during the search of the Grand Prix.

**B.** *Detective Bowling's Testimony Regarding the Drug Trade was Admissible.*

■ Detective Bryant Bowling testified about the drug trade, including things like baggies being used to package drugs, the amount of cocaine in a typical "hit," and his opinion regarding whether the amount of drugs seized from McCloud indicated an intent to traffic or for personal usage. McCloud argues Bowling's testimony "included nothing that was beyond the ken of a lay person[,]" meaning that "[t]he trial court abused its discretion when it allowed the Commonwealth to present Bowling's opinion testimony."

Our precedent is directly contrary to McCloud's argument. Bowling was unquestionably an experienced, qualified law enforcement officer.[24] We have approved the introduction of similar testimony both before[25] and after[26] the United States Su-

**20.** *Cummings v. Commonwealth*, 226 S.W.3d 62, 65 (Ky.2007) ("In order to use statements, whether exculpatory or inculpatory, made by a defendant subjected to custodial interrogation, the prosecution must demonstrate that the Appellant was advised of his Fifth Amendment rights, including the right to remain silent and the right to an attorney.").

**21.** *Id.*

**22.** *Mills v. Commonwealth*, 996 S.W.2d 473, 482 (Ky.1999) ("[T]he Commonwealth only needs to prove waiver of *Miranda* rights by a preponderance of the evidence."). *See also Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) ("Whenever the State bears the burden of proof in a mo-

tion to suppress a statement that the defendant claims was obtained in violation of our *Miranda* doctrine, the State need prove waiver only by a preponderance of the evidence.").

**23.** *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979).

**24.** Even McCloud states in his brief that "Detective Bowling has significant credentials and experience in narcotics enforcement, both as a Louisville police officer and with the U.S. Drug Enforcement Agency."

**25.** *See, e.g., Sargent v. Commonwealth*, 813 S.W.2d 801, 802 (Ky.1991) ("The trial judge did not commit error in allowing the police to

preme Court's landmark 1993 decision regarding expert testimony in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[27] And we have held that the type of testimony offered by Bowling was "representative of the type of expert opinion based on 'specialized knowledge' for which a formal *Daubert* hearing on reliability may be unnecessary...."[28] We believe our precedent remains a correct exposition of the law and, thus, hold that the trial court did not abuse its discretion when it permitted Bowling to render his opinions without first holding a formal *Daubert* hearing.[29]

C. *The Trial Court's Stray Comment While Orally Reading the Jury Instructions to the Jury Did Not Result in a Directed Verdict in Favor of the Commonwealth.*

▮▮▮▮ The trial court's written instruction to the jury on the trafficking in a controlled substance while in possession of a firearm charge provided that "[i]f you find the Defendant guilty under this Instruction, you will say so by your verdict and no more." Unfortunately, however, when the trial court read this instruction aloud to the jury it instead stated: "You will find the defendant guilty under this instruction. You will say so by your verdict and no more." McCloud argues on appeal that the trial court's misstatement constituted a de facto directed verdict in favor of the Commonwealth.

▮▮▮▮ No contemporaneous objection was lodged to the trial court's unfortunate slip-of-the-tongue. Thus, we may review only for palpable error.[30] In order for an error to be palpable, the error must be so egregious as to be "shocking or jurispru-

---

testify as to their expert opinion that the Sargents had the drugs in their possession for sale and not personal use. The testimony of the two detectives was admissible as that of expert witnesses. The police testimony indicates that their opinion was based on experience derived from many drug related investigations.... Both detectives testified about the marijuana trade[,] which is certainly specialized in character and outside the scope of common knowledge and experience of most jurors. The opinion of the police aided the jury in understanding the evidence and resolving the issues. The trial judge did not abuse his discretion when he determined that both police officers were sufficiently qualified to give expert testimony. There was no invasion of the province of the jury as the ultimate factfinder and there was no error.") (citations omitted).

**26.** *See, e.g., Parks v. Commonwealth,* 192 S.W.3d 318, 337 (Ky.2006) (Wintersheimer, J., dissenting) ("*Sargent v. Commonwealth,* 813 S.W.2d 801 (Ky.1991), permitted a police witness who is qualified by training and experience to testify in such a situation. *See also United States v. Bender,* 265 F.3d 464 (6th Cir.2001); *United States v. Quinn,* 230 F.3d 862 (6th Cir.2000); *United States v. Thomas,* 74 F.3d 676 (6th Cir.1996). These cases sup-

port the principle that a police officer, by virtue of his job, training and experience, can in certain instances assist a jury to understand aspects of the drug trade that the average lay juror would not be able to comprehend."); *Dixon v. Commonwealth,* 149 S.W.3d 426, 429–31 (Ky.2004) (finding no error in trial court's permitting detective to offer opinion testimony regarding a piece of paper found in defendant's vehicle as being drug-related transaction entries).

**27.** 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

**28.** *Dixon,* 149 S.W.3d at 431.

**29.** *Id.* ("Based on this evidence and existing precedents, we conclude that the trial court did not abuse its discretion in permitting Duvall to render his opinion without first holding a formal *Daubert* hearing.").

**30.** RCr 10.26 ("A palpable error which affects the substantial rights of a party may be considered by ... an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.")

dentially intolerable."[31]  A party claiming an error is palpable bears the heavy burden to demonstrate "the probability of a different result or error so fundamental as to threaten [a defendant's] entitlement to due process of law."[32]

██ Of course, "since the jury is the sole judge of the credibility of the witnesses, it is never proper for the court to direct a verdict of guilty where there is a plea of not guilty, notwithstanding the fact that the evidence of his guilt may be convincing and wholly uncontradicted."[33] But we do not regard the trial court's verbal miscue to have been a de facto directed verdict in favor of the Commonwealth.

██ Neither party has cited us to any precedent for this question.  And we believe the issue can be settled within the framework of our general precedent regarding the precedence written orders take over verbal statements.  A trial court is obligated to prepare written instructions (which the jury may take into their deliberations) and also to read the instructions aloud to the jury.[34]  Our precedents clearly hold that written orders of a court take precedence over any arguably contradictory oral statements.[35]  The written jury instructions permitted the jury to find McCloud guilty or not guilty of all offenses.  More specifically, the written instruction regarding the trafficking in a controlled substance while in possession of a firearm charge required the jury to find McCloud guilty "if, and only if" the jury members "believe[d] from the evidence beyond a reasonable doubt" that the Commonwealth had presented sufficient evidence for all the elements of that offense (as detailed in that instruction).  Additionally, the evidence against McCloud was strong.  Because the written instructions were a correct exposition of the law and adequately explained the jury's obligation to find McCloud guilty only if the jury members believed beyond a reasonable doubt that the evidence showed him to be guilty, we cannot conclude that the trial court's verbal slip in this case was so egregious as to rise to the level of a palpable error.[36]

*D.  McCloud Was Not Entitled to a Directed Verdict on the Firearm–Enhanced Charges.*

██ McCloud argues that there was insufficient evidence for the jury to have determined that he possessed a firearm in furtherance of the firearm-enhanced charges.  We disagree.

McCloud argues that there was no specific evidence showing a nexus between the firearm found under the Grand Prix's front seat and the criminal charges.  But our precedent makes clear that constructive

**31.**  *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky.2006).

**32.**  *Brooks v. Commonwealth*, 217 S.W.3d 219, 225 (Ky.2007).

**33.**  *Bardin v. Commonwealth*, 191 Ky. 651, 231 S.W. 208, 209 (1921).

**34.**  *See* RCr 9.54.

**35.**  *See, e.g., Terry v. Commonwealth*, 253 S.W.3d 466, 477 (Ky.2007).

**36.**  *People v. Rodriguez*, 77 Cal.App.4th 1101, 92 Cal.Rptr.2d 236, 244 (2000) ("It is generally presumed that the jury was guided by the written instructions.  The written version of jury instructions governs any conflict with oral instructions.  Consequently, as long as the court provides accurate written instructions to the jury to use during deliberations, no prejudicial error occurs from deviations in the oral instructions.  Here, the trial court's instructions were delivered to the jury orally and in writing.  Because the jury had access to the correct written instructions while deliberating, any error in reading the instructions was harmless.") (citations omitted).

possession of a firearm in close proximity to possession of illegal narcotics (*i.e.*, the firearm is within the immediate control of the arrestee at the time of arrest) is sufficient to create a jury question on whether the firearm was possessed in furtherance of drug dealing.[37] It is uncontested that a loaded firearm was found under the front seat of the Grand Prix that McCloud was driving immediately before his arrest and that McCloud had hidden narcotics on his person and in the Grand Prix. Thus, drawing all inferences in favor of the Commonwealth, it was not clearly unreasonable for a jury to have found McCloud guilty of the firearm-enhanced offenses.[38]

### III.   *CONCLUSION.*

For the foregoing reasons, the Jefferson Circuit Court is affirmed.

All sitting.   All concur.

---

**37.** *Campbell v. Commonwealth,* 260 S.W.3d 792, 804 (Ky.2008) ("Furthermore, the proof was sufficient to create a jury issue as to the elements of the firearm enhancement: possession of a firearm at the time the drug offenses were committed and possession of a firearm in furtherance of the drug offenses. Whether or not the gun was covered by bedding, it was found in Campbell's home and, thus, in his constructive possession. Furthermore, given its proximity to the marijuana, drug paraphernalia, and methamphetamine manufacturing equipment found, the jury could reasonably infer that it was used in furtherance of the drug offenses. Thus, the trial court properly denied the directed verdict motion. . . .") (footnote omitted); *Kotila v. Commonwealth,* 114 S.W.3d 226, 247 (Ky.2003), *overruled on other grounds by Matheney v. Commonwealth,* 191 S.W.3d 599 (Ky.2006) ("Thus, constructive possession of a firearm within a vehicle at the time of arrest and the

commission of the offense, as here, satisfies the 'nexus' requirement of KRS 218A.992.").

**38.** *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991) ("On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony. On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.").