RENDERED: OCTOBER 29, 2020
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0087-DG

COMMONWEALTH OF KENTUCKY                                    APPELLANT

V.
ON REVIEW FROM COURT OF APPEALS
NO. 2017-CA-1539
FAYETTE CIRCUIT COURT NO. 17-CR-00507

LEECOLE MITCHELL                                             APPELLEE

**OPINION OF THE COURT BY JUSTICE KELLER**

**<u>AFFIRMING IN PART, REVERSING IN PART, AND REMANDING</u>**

LeeCole Mitchell entered a conditional guilty plea to the charge of felon in possession of a handgun, reserving the right to appeal the trial court's denial of his motion to suppress evidence obtained from the search of a vehicle in which he was a passenger. The Court of Appeals reversed the trial court's denial of Mitchell's suppression motion finding the stop was impermissibly extended. Furthermore, the Court of Appeals held as precluded the Commonwealth's argument that officers had reasonable suspicion to justify the extension. We affirm the Court of Appeals' holding that Mitchell's stop was impermissibly extended but reverse the Court of Appeals' conclusion that the Commonwealth's reasonable suspicion argument was precluded, and remand

to the trial court for additional factual findings and conclusions of law as to the officers' reasonable suspicion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

In April 2017, Officer Nathan Barks (Barks) was working off duty at a Walmart on Richmond Road in Lexington when he heard a car screeching its tires upon exiting the parking lot. Barks immediately got into his patrol car and initiated pursuit of the vehicle. Barks made the stop at a traffic light near the intersection of South Locust Hill Road and Richmond Road. Upon approaching the driver's side of the car, Barks became concerned that the driver was going to pull away. He immediately smacked the rear of the vehicle to get the driver's attention which was successful in stopping the vehicle. Mitchell was a passenger in the vehicle's right rear seat.

The driver, William Mitchell (hereafter William), LeeCole Mitchell's brother, told Barks the tire squealing was caused by a mechanical issue. Both William and the front seat passenger, Christopher Easley, became somewhat argumentative, while Mitchell purportedly avoided eye contact with Barks from the rear seat. About two minutes after Barks effectuated the stop, Officer Eldar Agayev (Agayev) arrived as backup. Agayev obtained driver's licenses from all three passengers while Barks began manually filling out a citation for William.

Approximately 12 minutes after the initial stop and Agayev had completed his background check on the occupants, the officers had a discussion for another two to three minutes about whether to request a canine unit. Agayev had encountered William before and recalled he had been involved

2

in narcotics activities. A records check revealed that Mitchell had a criminal history, including firearm-related offenses. The area in question was Agayev's regular beat, and he testified he had conducted narcotics investigations and arrests in the Walmart parking lot in the past. Both officers characterized the area as a high crime area. Further, both officers testified that Mitchell avoided eye contact with them. Barks also testified that he observed Mitchell "digging around" the seat or floorboard area of the car while he questioned William.

The officers spent a few minutes discussing whether to call for the canine unit and then made the request. Initially, Barks was told by dispatch that no dog was available, but, approximately a minute later, the officers were told a canine unit was available and en route to the stop location. Immediately after this notification, Agayev told Barks to take his time filling out the citation. This exchange occurred approximately sixteen minutes after the stop had been initiated. At the suppression hearing, Agayev testified that he did not intend for Barks to extend the stop to allow time for the canine unit to arrive. He testified that his statement was to reassure Barks, who had been a member of the police department for only about a year, to carefully complete the citation and not be pressured in filling it out. However, Agayev admitted at the hearing that no one in the vehicle had been exerting pressure upon Barks to complete the citation quickly.

The canine officer arrived approximately twenty-eight to twenty-nine minutes after the stop, contemporaneous with Barks's completion of the citation. The officers then removed the occupants from the vehicle. Upon

3

exiting the vehicle, Mitchell told the officers it contained his firearms. The officers found two pistols and a rifle in the vehicle. Mitchell was arrested and charged with possession of a handgun by a convicted felon. Mitchell was indicted by the Fayette County Grand Jury for being a convicted felon in possession of a handgun. In July 2017, Mitchell filed a motion to suppress the evidence seized during the stop, arguing the traffic stop was impermissibly prolonged beyond its original purpose and violated his Fourth Amendment rights.

The trial court held a suppression hearing at which Officers Barks and Agayev testified. At the close of the evidence at the hearing, defense counsel stated, "[t]here are a lot of different arguments I'd like to make, and I'd like leave to brief the court." The trial court replied, "[i]t's a pretty simple issue, I think." The trial court then engaged in an extended colloquy with both Mitchell's counsel and the Commonwealth. During the back and forth conversation the Commonwealth argued not only that the stop was not impermissibly extended, but also that the officers had reasonable suspicion to justify extending the stop beyond its original purpose. The defense made counter arguments to both points. At one point, the trial court, on its own initiative, called Barks back to the stand.[1] The court asked Barks a series of six

---

[1] The video record of the hearing starts with Barks being initially called to the stand, so it is unclear whether Kentucky Rule of Evidence 615, "Exclusion of Witnesses," was invoked prior to his initial testimony. The recall of Barks occurred approximately ten minutes into the discussion with trial counsel, a period of time in which both Barks and Agayev were in the courtroom. Whether KRE 615 was invoked or not, neither counsel objected to Barks's recall. During the period prior to Barks's recall, the trial judge and lawyers discussed multiple issues including the extended

4

questions over a period of about five minutes. The court elicited additional specific details about the stop, including the timing of Barks's completion of the citation, his state of mind as the stop progressed, and his interpretation of Agayev's directive to take his time filling out the citation. As we noted, Barks was in the courtroom as the trial court and counsel discussed the importance of these elements and it is difficult to imagine that such knowledge did not influence his answers, even if only subconsciously.

Once Barks was permitted to step down again, the court took about another ten minutes to engage in further discussions with counsel and wrap up the hearing. In making its ruling, the court made limited findings of fact on the record. The trial court definitively stated that: (i) the initial traffic stop was lawful; (ii) Agayev arrived approximately two minutes after the initial stop; (iii) the discussion of whether to call for a canine started approximately eleven minutes after Agayev's arrival; (iv) officers were informed that a dog was on the way approximately four minutes after initiating the discussion (three minutes for discussion plus time to talk on the radio); (v) the dog arrived approximately twenty-nine minutes after the stop was initiated; (vi) Agayev, as the senior officer, used the opportunity to teach Barks about calling for a dog; and (vii) the court did not believe the stop was extended to allow for the canine's arrival. From these facts, the court concluded that the resulting delay was not

_____

discussion of the need for the dog, Agayev's comment to "take your time filling out the citation," whether officers had engaged in "deliberate gamesmanship," and whether officers had a reasonable articulable suspicion to justify the stop's extension. Barks heard all of this conversation before being called back to the witness stand.

5

unreasonable and denied Mitchell's motion to suppress without addressing whether the officers had independent reasonable suspicion to extend the stop.

As stated, the vast majority of the discussion centered on whether the call for the canine impermissibly extended the stop and whether Agayev's directive to Barks to take his time writing the citation indicated a willful delay on the part of the officers to facilitate the dog's arrival. The very limited discussion about reasonable suspicion was conducted in a free-flowing manner, acknowledging both parties' interpretation of the night's events. The court made no express factual findings that would form a basis to determine whether reasonable, articulable suspicion existed to justify extending the stop.

The court's written order was sparse, stating only, "[a]fter considering the motion and testimony and arguments by counsel, the Motion is OVERRULED for the reasons stated on the record." Mitchell eventually entered a conditional guilty plea to the charge of convicted felon in possession of a handgun, reserving the right to appeal the denial of his motion to suppress evidence obtained from a vehicle in which he was a passenger.

The Court of Appeals unanimously reversed the trial court. The Court of Appeals held that it was unrefuted that the officers deferred completion of the stop beyond its original purpose to discuss and then request the canine search, a purpose totally unrelated to the original stop. Furthermore, the court held that the Commonwealth was precluded from arguing reasonable suspicion of criminal activity as a justification for the extension. It based its preclusion on the fact the trial court did not make specific findings regarding the reasonable

6

suspicion argument and the Commonwealth failed to request such specific findings.

## II.   STANDARD OF REVIEW

Kentucky Rule of Criminal Procedure ("RCr") 8.27 governs motions to suppress evidence and requires the trial court to "state its essential findings on the record."[2] A trial court's denial of a motion to suppress is reviewed under a two-prong test. First, we review the trial court's findings of fact under the clearly erroneous standard.[3] Under this standard, the trial court's findings of fact will be conclusive if they are supported by substantial evidence.[4] Second, we review de novo the trial court's application of the law to the facts.[5] In the current case, neither party argues the trial court's limited findings of fact are clearly erroneous and the issue turns on the second prong of our test: did the trial court properly apply the facts to the law?

## III.   ANALYSIS

The Commonwealth urges this Court to reverse the Court of Appeals. The Commonwealth argues that the Court of Appeals erred in finding the stop of Mitchell was impermissibly extended, or in the alternative, the Court of Appeals

---

[2] RCr 8.27(5), RCr 8.20(2); *see also* CR 52.01.

[3] A factual finding is not clearly erroneous if it is supported by substantial evidence, that is, "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens–Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citations omitted).

[4] *Davis v. Commonwealth*, 484 S.W.3d 288, 290 (Ky. 2016) (citing *Simpson v. Commonwealth*, 474 S.W.3d 544, 547 (Ky. 2015)).

[5] *Turley v. Commonwealth*, 399 S.W.3d 412, 417 (Ky. 2013).

erred in failing to consider whether the officers had reasonable suspicion, independent of the initial stop's justification, to extend the stop to allow for the dog sniff. "It has long been considered reasonable for an officer to conduct a traffic stop if he or she has probable cause to believe that a traffic violation has occurred."[6] Furthermore, an officer's subjective motivations for the stop are not relevant, "[a]s long as an officer 'has probable cause to believe a civil traffic violation has occurred[.]"[7]

While officers may detain a vehicle and its occupants to conduct an ordinary stop, such actions may not be excessively intrusive and must be reasonably related to the circumstances justifying the initial seizure.[8] The Supreme Court in *Rodriguez v. United States* said that even *de minimis* delays fail a constitutional test **absent other circumstances**.[9] An officer's ordinary inquiries incident to traffic stops do not impermissibly extend such stops.[10] Included in such ordinary inquiries are an officer's review of the driver's information, auto insurance and registration, and performing criminal background checks of the driver and any passengers during the otherwise lawful traffic stop.[11] In order to extend the stop beyond the time required to

---

[6] *Commonwealth v. Bucalo*, 422 S.W.3d 253, 258 (Ky. 2013) (citing *Wilson v. Commonwealth*, 37 S.W.3d 745 (Ky. 2001)).

[7] *Id.* (quoting *Wilson*, 37 S.W.3d at 749); *see also Davis*, 484 S.W.3d at 291.

[8] *Davis*, 484 S.W.3d at 292 (citing *Turley*, 399 S.W.3d at 421).

[9] 575 U.S. 348, 357 (2015) (emphasis added).

[10] *Carlisle v. Commonwealth*, 601 S.W.3d 168, 179 (Ky. 2020).

[11] *Id.*

complete its initial purpose, something must occur during the stop to create a "reasonable and articulable suspicion that criminal activity is afoot."[12]

### A. The Initial Mission of the Traffic Stop was Impermissibly Extended to Facilitate the Dog Sniff.

We outlined in *Davis v. Commonwealth*[13] our test for when officers impermissibly extend stops. In *Davis* we stated, "[t]here is no '*de minimis* exception' to the rule that a traffic stop cannot be prolonged for reasons unrelated to the purpose of the stop."[14] A stop is unreasonably extended when the "tasks tied to the traffic infraction are – or reasonably should have been – completed…"[15]

In *Smith v. Commonwealth*, a canine officer, at the request of police detectives who had been surveilling Smith, initiated a traffic stop of Smith for failure to signal.[16] The canine officer found Smith to be cooperative, but nervous.[17] The officer then immediately led his dog on a sniff search of Smith's car which resulted in the discovery of seven grams of cocaine.[18] The entire incident from stop to arrest was seven minutes, but the trial court found the

---

[12] *Turley*, 399 S.W.3d at 421; *see also Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.").

[13] 484 S.W.3d 288.

[14] *Id.* at 294.

[15] *Smith v. Commonwealth*, 542 S.W.3d 276, 281-82 (Ky. 2018) (citing *Rodriguez*, 575 U.S. at 349).

[16] *Id.* at 278-79.

[17] *Id.* at 279.

[18] *Id.*

use of the dog impermissibly extended the stop without reasonable cause.[19]

The Court of Appeals affirmed the trial court.[20]

We said that the canine officer's interactions with Smith were inconsistent with the reason for the stop. In fact, the officer conducted a sniff search **instead of** completing the ordinary elements of the stop. We further stated that,

> [t]he legitimate purpose of the traffic stop...was to cite [Smith] for making an improper turn....[I]nstead of diligently pursuing the purpose of the traffic stop, [the officer] seemingly abandoned the legitimate purpose of issuing a traffic citation because he immediately asked [Smith] about drugs and launched the dog's sniff search.[21]

The officer in *Smith* did not diligently pursue the traffic violation.[22] Prior to the stop, officers lacked a reasonable, articulable suspicion to justify the stop of Smith's car for anything other than the traffic violation, and nothing in the traffic violation, or Smith's interaction with the officer during the stop changed this fact.[23] For that reason, we held that the sniff search of Smith's car was an impermissible extension of the stop and affirmed the lower courts' suppression of the evidence.[24]

---

[19] *Id.* at 279-80.

[20] *Id.*

[21] *Id.* at 281-82 (emphasis added).

[22] *Id.* at 282.

[23] *Id.* at 283-84.

[24] *Id.* at 280.

The permissible duration of a stop is a fluid and fact dependent analysis. That is to say, during a stop, police officers are not on a clock. Officers neither get bonus time to pursue other investigative tracks by completing a citation quickly,[25] nor is an inexperienced officer forced to meet an arbitrary benchmark that is unreasonable given his or her background. The test is what officers do at the scene.[26] As long as the officers are diligently working to complete the purpose of the initial stop, a stop is not impermissibly extended merely because one stop is marginally longer than another.

In this case, the Court of Appeals correctly stated that it was "unrefuted that the officers deferred the completion of the stop beyond its original purpose to discuss and then request a canine search."[27] There is no *de minimis* or "reasonableness" exception to *Davis* or *Rodriguez* for delays attributed to actions unrelated to the purpose of the stop. This opinion should not be read to say that officers may not confer as to the proper method of processing a stop. When such a discussion is related to the original purpose of the stop, then no impermissible delay occurs. If discussions are unrelated to the original purpose of the stop, officers may still have such conferences if the officers continue to exercise reasonable diligence in completing the purpose of the initial stop. When it comes to pursuing unrelated investigative issues, officers must be able to do so while simultaneously completing the purpose of the stop. For this

---

[25] *See Rodriguez*, 575 U.S. at 357.

[26] *Id.* (citing *Knowles v. Iowa*, 525 U.S. 113 (1998)).

[27] *Mitchell v. Commonwealth*, 2017-CA-001539-MR, 2019 WL 258162, *3 (Ky. App. January 18, 2019).

11

reason, we affirm the Court of Appeals' holding that the discussion regarding summoning the canine unit impermissibly delayed completion of the stop.

## B. The Court of Appeals Erred in Failing to Consider Whether Officers Barks and Agayev had Reasonable Suspicion of Criminal Activity to Justify Holding Mitchell until the Drug Dog Arrived.

Even under *Davis* and *Rodriguez*, officers may develop reasonable, articulable suspicion during a stop that criminal activity unrelated to the initial purpose of the stop is afoot, and such reasonable suspicion may justify the extended seizure of individuals to investigate said suspected criminal activity.[28] The Commonwealth argues that Officers Barks and Agayev had such reasonable, articulable suspicion justifying the extended detention of Mitchell. The Court of Appeals held the Commonwealth failed to preserve this issue and deemed it precluded, citing our decision in *Smith, supra*.[29] In *Smith*, we affirmed the Court of Appeals' holding precluding the Commonwealth's argument that as a parolee, Smith was subject to warrantless and suspicionless searches.[30] Under CR 52.04,

> [a] final judgment shall not be reversed or remanded because of a failure of the trial court to make a finding of fact on an issue essential to the judgment unless such failure is brought to the attention of the trial court by a written request for a finding on that issue or by a motion pursuant to Rule 52.02.

---

[28] *See Rodriguez*, 575 U.S. at 355; *Smith*, 542 S.W.3d at 283.

[29] *Mitchell*, 2019 WL 258162 at *3.

[30] *Smith*, 542 S.W.3d at 284.

12

While reversal of a lower court is restricted, an appeals court may affirm for any reason supported by the record, and the appellee may present alternative reasons justifying the decision of the trial judge.[31]

The procedural posture in *Smith* was distinct from the present case. In *Smith*, we were reviewing the Commonwealth's attempt to have the Court of Appeals **reverse** the trial court's granting of the defendant's motion to suppress evidence.[32] In its appeal, the Commonwealth raised for the first time the issue of Smith's parole status.[33] While Smith's parole status was part of the evidentiary record, the Commonwealth never raised it to the trial court as a justification for the warrantless search or requested the trial court amend its order pursuant to CR 52.02.[34] We held that under CR 52.04 the Commonwealth's failure to either ask for additional findings or for the trial court to amend its order precluded the Commonwealth from arguing Smith's parole status in support of reversal.[35]

Here, the Court of Appeals failed to distinguish the facts of *Smith* from the case before us. Unlike *Smith*, where the Commonwealth was the appellant

---

[31] *Commonwealth v. Fields*, 194 S.W.3d 255, 257 (Ky. 2006) ("The Court of Appeals improperly held that the prosecution could not present on appeal an alternative reason justifying the decision of the trial judge."); *see also McCloud v. Commonwealth*, 286 S.W.3d 780 (Ky. 2009) ("[I]t is well settled that an appellate court may affirm a lower court for any reason supported by the record."); *Ordway v. Commonwealth*, 352 S.W.3d 584 (Ky. 2011) (affirming trial court on ground not argued before the trial court).

[32] *Smith*, 542 S.W.3d at 284 (emphasis added).

[33] *Id.* at 285.

[34] *Id.*

[35] *Id.*

seeking reversal, here the Commonwealth was the appellee seeking affirmation. As the "losing" party in *Smith*, the Commonwealth had the burden to identify errors or omissions in the trial court record in order to preserve them for appeal. In the present case, the Commonwealth had no reason to disturb the findings of the trial court. The Commonwealth was not asking the Court of Appeals to *reverse* the trial court, but rather to affirm the trial court for other reasons, consistent with *Fields*. Furthermore, unlike the Commonwealth in *Smith*, the Commonwealth here introduced evidence and argued at the suppression hearing that Officers Barks and Agayev in fact had reasonable suspicion to prolong the stop to facilitate the canine unit's arrival. The trial court heard this evidence but made no factual findings or conclusions of law on the record supporting or questioning the officers' reasonable suspicion. Accordingly, we hold that the Court of Appeals erred in deeming the question of reasonable suspicion to be precluded from its consideration.

Defense counsel requested an opportunity to brief the issues surrounding the stop as part of the suppression hearing. RCr 8.27(4) states that "the court **shall** allow a party to file a brief in support of or in opposition to any such motion or objection, either in advance of the hearing, upon its final adjournment, or both."[36] The trial court in this case heard the request, and stated it felt it was a "simple issue," suggesting the court felt the issues did not warrant briefing. The court told defense counsel that they could readdress the

---

[36] (emphasis added).

14

request at the end if counsel still believed there were issues worthy of briefing. At the close of the hearing, the court issued its denial of the motion without readdressing counsel's request to brief. RCr 8.27 is explicit; parties shall have leave to brief issues in support of motions and Mitchell's defense counsel never withdrew his request to provide such briefing.

An appellate court reviews a trial court's finding regarding reasonable suspicion de novo, but such review is predicated on a sufficient record as to the underlying facts to permit a review. The dearth of factual findings regarding the officers' basis for reasonable suspicion, coupled with the trial court's denial of defense counsel's request to brief these issues, prevents an adequate review. Therefore, we remand to the trial court to allow the parties to brief the issue of whether the officers had reasonable, articulable suspicion to extend the stop and to enter a written order with appropriate findings of fact and conclusions of law regarding this issue.

## IV.    CONCLUSION

For the aforementioned reasons we affirm the Court of Appeals' holding that the stop was impermissibly extended but reverse its holding that the Commonwealth's argument that officers had independent reasonable suspicion was precluded. However, because the trial court did not make findings of fact or conclusions of law regarding the officers' reasonable suspicion, we remand to the trial court for further proceedings consistent with this Opinion.

All sitting. All concur.

15

COUNSEL FOR APPELLANT:

Daniel J. Cameron
Attorney General of Kentucky

Todd Dryden Ferguson
Assistant Attorney General


COUNSEL FOR APPELLEE:

Erin Hoffman Yang
Assistant Public Advocate