RENDERED: SEPTEMBER 29, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0525-MR

LP OWENSBORO II, LLC D/B/A
SIGNATURE HEALTHCARE AT
HILLCREST; ASBR HOLDINGS,
LLC; JJLA, LLC; LAS PALMAS SNF,
LLC; LP MANAGER, LLC; LPMM,
INC.; LPSNF, LLC; SHC KY
HOLDINGS, LLC; SHC LP
HOLDINGS, LLC; SIGNATURE
HEALTHCARE CLINICAL
CONSULTING SERVICES, LLC;
SIGNATURE HEALTHCARE
CONSULTING SERVICES, LLC;
SIGNATURE HEALTHCARE, LLC;
AND WILLIAM "BILL" CONLEY, IN
HIS CAPACITY AS
ADMINISTRATOR OF SIGNATURE
HEALTHCARE AT HILLCREST                                          APPELLANTS


                        APPEAL FROM DAVIESS CIRCUIT COURT
v.                      HONORABLE JAY A. WETHINGTON, JUDGE
                        ACTION NO. 21-CI-00093


KAHALI GREEN, AS
ADMINISTRATRIX OF THE ESTATE
OF DEBORAH J. MOORMAN,
DECEASED                                                          APPELLEE

\*\* \*\* \*\* \*\* \*\*

BEFORE:  CALDWELL, GOODWINE, AND McNEILL, JUDGES.

McNEILL, JUDGE:  LP Owensboro II, LLC d/b/a Signature Healthcare at Hillcrest and related entities[1] (collectively, "Signature") appeal from the Daviess Circuit Court's denial of their motion to compel arbitration.  For the reasons below, we affirm the trial court's denial of the motion to compel arbitration as to all claims except Green's individual wrongful death claim.  We reverse as to the wrongful death claim and remand for entry of an order compelling arbitration of that claim.

Kahali Green ("Green"), as administratrix of the estate of her deceased mother, Deborah J. Moorman, brought this action against Signature, a long-term healthcare facility, alleging that Moorman, while a resident, "suffered accelerated deterioration of her health and physical condition beyond that caused by the normal aging process, including, but not limited to, the following:  (a) Abuse resulting in sexually transmitted disease; (b) Contusion and hematoma to

---

[1] LPSNF, LLC; Signature Healthcare Consulting Services, LLC; Signature Healthcare Clinical Consulting Services, LLC; JJLA, LLC; SHC KY Holdings, LLC; SHC LP Holdings, LLC; ASBR Holdings, LLC; Signature Healthcare, LLC; Las Palmas SNF, LLC; LP Manager, LLC; LPMM, Inc.; and William "Bill" Conley, in his capacity as Administrator of Signature Healthcare at Hillcrest.

left thigh, (c) Contractures, (d) Malnutrition and weight loss, (e) Urinary tract infection; (f) Left hand wound, and (g) Death." The complaint asserted claims for negligence, medical negligence, corporate negligence, and wrongful death, providing numerous examples of Signature's alleged negligence, including insufficient staffing, inadequate record keeping, and substandard care. Particularly relevant to the appeal is the allegation that Moorman suffered abuse resulting in sexually transmitted disease. As to this claim, the complaint accused Signature of failing "to prevent . . . tortious conduct by persons, whether or not their servants or agents, upon premises or instrumentalities under their control."

Signature moved to compel arbitration of all claims based upon two arbitration agreements signed by Green, one pertaining to Moorman's residency at Signature from April 8, 2019 to June 5, 2019, and the other from November 5, 2019 to December 18, 2019. Green argued both agreements were unenforceable because she lacked authority to bind Moorman to arbitration, the agreements were unconscionable, and her claims based upon sexual assault were outside the scope of the parties' agreement, citing *Valued Services of Kentucky, LLC v. Watkins*, 309 S.W.3d 256 (Ky. App. 2009). The trial court found *Valued Services* controlling and denied the motion to compel arbitration. It did not rule on Green's other bases for denying the motion. This appeal followed.

"Under KRS[2] 417.220(1)(a), an appeal may be taken from an order denying an application to compel arbitration. The standard of review of a trial court's ruling on a motion to compel arbitration is a *de novo* determination of whether the trial judge erred when deciding a factual or legal issue." *Green v. Frazier*, 655 S.W.3d 340, 345 (Ky. 2022) (citations omitted). Signature argues the trial court erred in finding that Green's claims based upon sexual assault were outside of the parties' agreement; the trial court failed to consider whether Green had the authority to bind Moorman to the April 2019 arbitration agreement;[3] and the trial court failed to address the arbitrability of Green's wrongful death claims.[4]

Before considering these claims of error, however, we first address Signature's argument that pursuant to the parties' agreement the arbiter, not the trial court, should have decided the issue of arbitrability.[5] We disagree. A threshold issue raised by Green was whether she had authority to bind Moorman to the arbitration agreement, *i.e.*, the existence of a binding agreement to arbitrate.

---

[2] Kentucky Revised Statutes.

[3] Signature concedes Green lacked authority to bind Moorman to the November 2019 arbitration agreement pursuant to the Kentucky Supreme Court's decision in *Jackson v. Legacy Health Services, Inc.*, 640 S.W.3d 728 (Ky. 2022).

[4] Signature makes several other arguments that are secondary to and dependent upon the success of the foregoing arguments; because we find their primary arguments unpersuasive, we need not address them.

[5] It is unclear if Signature is claiming the arbiter should have determined whether Green's claims are subject to arbitration, or the threshold issue of whether there was a valid agreement to arbitrate. For purposes of the appeal, we assume it intended the latter.

"[W]hen a party raises a good-faith [formation] challenge to the arbitration agreement itself, that issue must be resolved before a court can say that he clearly and unmistakably intended to *arbitrate* that very validity question." *Dixon v. Daymar Colleges Group, LLC*, 483 S.W.3d 332, 342 (Ky. 2015) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 76, 130 S. Ct. 2772, 2781, 177 L. Ed. 2d 403 (2010) (Stevens, J., dissenting)).

We turn now to whether the trial court erred in denying the motion to compel arbitration. "Arbitration agreements, as with any other valid contract, are generally enforceable. State courts must compel arbitration when there is a valid, written arbitration agreement between the parties." *Jackson*, 640 S.W.3d at 732 (citing 9 U.S.C.[6] § 2). Under both the Kentucky Uniform Arbitration Act[7] ("KUAA"), and the Federal Arbitration Act[8] ("FAA"), "a party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate." *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 590 (Ky. 2012) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)).

---

[6] United States Code.

[7] KRS 417.045 *et seq.*

[8] 9 U.S.C. §§ 1 *et seq.*

"[T]he existence of a binding agreement to arbitrate is necessarily a threshold consideration for a trial court faced with a motion to compel arbitration. Disposition of that issue, as both the United States Supreme Court and [the Kentucky Supreme] Court have long recognized, implicates state law contract principles." *Jackson*, 640 S.W.3d at 732 (citation omitted). Here, the trial court never ruled on the threshold issue of whether there was a binding agreement to arbitrate but instead held that Green's claims grounded in sexual assault were outside of the scope of the parties' agreement and thus not subject to arbitration. We do not reach the propriety of this ruling but agree with the trial court's ultimate decision to deny the motion to compel arbitration, because Signature has not met its burden of proving the existence of a binding arbitration agreement.[9]

"The fundamental principle of contract formation is that [t]o create a valid, enforceable contract, there must be a voluntary, complete assent by the parties having capacity to contract." *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 321 (Ky. 2015), *rev'd in part, vacated in part by Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 137 S. Ct. 1421, 197 L. Ed. 2d 806 (2017)) (citing Conners v. Eble, 269 S.W.2d 716, 717-18 (Ky. 1954)) (internal

---

[9] "[A]n appellate court may affirm a lower court's decision on other grounds as long as the lower court reached the correct result." *Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 576 (Ky. 2009) (citing *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n. 19 (Ky. 2009) ("[I]t is well-settled that an appellate court may affirm a lower court for any reason supported by the record.")).

quotation marks omitted). An agent with proper authority can assent to a contractual agreement on behalf of another. *Id.* However, without proper authority, the requisite assent cannot be provided by the agent. *Id.* Therefore, we begin our analysis with the threshold issue of whether Green had authority to enter into the arbitration agreement on Moorman's behalf. Signature seeks to enforce the April 2019 agreement, which was signed by Green in her individual capacity and as Moorman's alleged health care surrogate.[10] Concurrent with signing the arbitration agreement, Green signed a document titled "Appointment of Health Care Surrogate Pursuant to KRS 311.631."[11] Based upon this document, Signature argues, Green had authority to bind Moorman to the arbitration agreement as her health care surrogate. We would note that this document was not signed by Moorman, and there is no evidence Moorman executed a written living will designating Green as her health care surrogate pursuant to KRS 311.623. Therefore, Green's authority, if any, to make health care decisions on behalf of Moorman must derive from statute.

---

[10] It is undisputed Green was not Moorman's guardian and did not have power-of-attorney at the time she signed the arbitration agreement.

[11] This document was cosigned by two of Green's siblings, consenting to the appointment.

Health care surrogacy in Kentucky is governed by the Kentucky Living Will Directive Act, KRS 311.621 *et seq.* KRS 311.631 provides in relevant part:

> (1) If an adult patient *whose physician has determined that he or she does not have decisional capacity* has not executed an advance directive, or to the extent the advance directive does not address a decision that must be made, any one (1) of the following responsible parties, in the following order of priority if no individual in a prior class is reasonably available, willing, and competent to act, shall be authorized to make health care decisions on behalf of the patient:
>
> . . . .
>
>> (d) An adult child of the patient, or if the patient has more than one (1) child, the majority of the adult children who are reasonably available for consultation . . . .

(Emphasis added.) Thus, KRS 311.631 authorizes select third parties to make health care decisions on behalf of others if certain prerequisites are met: (1) a physician has determined that the patient does not have decisional capacity[12] and (2) the patient has not executed an advanced directive, or the directive does not cover the decision at issue.

Here, there is no evidence that a physician had determined Moorman lacked decisional capacity when Green signed the arbitration agreement. Without

---

[12] KRS 311.621(5) defines "decisional capacity" as "the ability to make and communicate a health care decision[.]"

this finding, the statute simply does not apply, and Green had no authority to make health care decisions on Moorman's behalf.  As noted above, Signature had the burden of establishing a valid agreement to arbitrate.  *Ping*, *supra*.  It presented no evidence below or on appeal showing that this statutory precondition was met.[13] Signature failed to prove Green qualified as a health care surrogate under KRS 311.631; therefore, any agreement she entered on Moorman's behalf was not binding, and void.  Therefore, the trial court did not err in denying Signature's motion to compel arbitration of Green's claims, with one exception, which we discuss below.

In addition to various negligence claims, Green's complaint also alleged wrongful death.  Signature argues that, at a minimum, Green's individual wrongful death claim is subject to arbitration pursuant to *LP Louisville East, LLC v. Patton*, 651 S.W.3d 759, 772 (Ky. 2020), *as modified on denial of reh'g* (Apr. 29, 2021), because she signed the arbitration agreement in her individual capacity. Therefore, even if the agreement is not binding on Moorman, it is binding on Green.  Green's brief does not address this argument specifically.  However, the arbitration agreement's signature line reads, "Resident's Authorized

---

[13] We would note that other court's interpreting similar surrogacy statutes have concluded that a finding of capacity is a prerequisite to the statute's applicability.  *See Adams Community Care Center, LLC v. Reed*, 37 So. 3d 1155, 1158 (Miss. 2010); *Corum v. Roswell Senior Living, LLC*, 248 P.3d 329, 333 (N.M. Ct. App. 2010); *Barbee v. Kindred Healthcare Operating, Inc.*, No. W2007-00517-COA-R3-CV, 2008 WL 4615858, at *12 (Tenn. Ct. App. Oct. 20, 2008).

Representative/Individual signature." An asterisk next to "Individual" clarifies that "Representative understands and agrees s/he is signing in both representative and individual capacities and that this agreement binds Representative, as well as Resident." Green does not dispute she signed the agreement in her individual capacity, or allege the agreement is invalid, as to her, for any reason. Therefore, we agree that any individual wrongful death claim by Green would be subject to arbitration pursuant to the parties' agreement. We reverse the trial court's denial of the motion to compel arbitration as to this issue.

Based upon the foregoing, the order of the Daviess Circuit Court is affirmed, in part, and reversed as to Green's individual wrongful death claim, which we remand with instruction to order the parties to arbitration. The trial court shall stay proceedings in accordance with KRS 417.060(4).


ALL CONCUR.


BRIEFS FOR APPELLANTS:

A. Pete Pullen
Rebecca A. Lambert
Louisville, Kentucky

BRIEF FOR APPELLEE:

Lisa E. Circeo
Hannah R. Jamison
Lexington, Kentucky