**John David LINDSEY, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

No. 2007–CA–002469–MR.

Court of Appeals of Kentucky.

Oct. 16, 2009.

Discretionary Review Denied by
Supreme Court April 14, 2010.

Gene Lewter, Department of Public Advocacy, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Courtney J. Hightower, Assistant Attorney General, Frankfort, KY, for appellee.

Before NICKELL, STUMBO, and WINE, Judges.

## OPINION

NICKELL, Judge.

John David Lindsey (Lindsey) appeals from a September 17, 2007, Hardin Circuit Court judgment based upon his conditional guilty plea[1] to charges of complicity to manufacture methamphetamine,[2] complicity to possess a controlled substance in the first-degree,[3] possession of a controlled substance in the second-degree,[4] and complicity to possess drug paraphernalia.[5] Lindsey was sentenced to ten years' confinement.[6] On appeal, he argues the trial court erred by denying his motion to suppress evidence obtained from an illegal search of the automobile in which he was a passenger in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. Finding that the officers had reasonable suspicion to stop the driver of the vehicle and probable cause to search the car, we affirm.

This appeal stems from a traffic stop in August 2005 following a report from a Walgreens pharmacy about the purchase and attempted purchase of multiple quantities of pseudoephedrine[7] by two men.

Through investigation and surveillance, officers determined Mark Rountree (Rountree) was the driver of the vehicle and Lindsey was his passenger. Upon stopping and searching the vehicle, officers found several items used in the manufacture of methamphetamine including pseudoephedrine, lithium batteries, solvents, and receipts for pseudoephedrine, piping and a funnel. Both Rountree and Lindsey were indicted on multiple drug offenses in October 2005, and their cases were consolidated in May 2006. Rountree ultimately entered a conditional guilty plea (separately from Lindsey) to charges of complicity to possess a controlled substance in the first-degree, complicity to possess a controlled substance in the second-degree, and complicity to possess drug paraphernalia. Rountree was sentenced to fourteen years' confinement followed by five years of probation. His conviction was affirmed by this Court in *Rountree v. Commonwealth,* 2008 WL 4601285 (rendered October 17, 2008, unpublished, discretionary review denied February 11, 2009).

On appeal, Rountree argued that the police officers did not have reasonable suspicion to make the initial traffic stop and lacked probable cause to conduct a warrantless search of his car. In *Rountree,* we held that the police officers had reasonable suspicion to stop the car based on the totality of the circumstances. We further held the warrantless search of the car constitutional because Detective Billy Ed-

---

1. Kentucky Rules of Criminal Procedure (RCr) 8.09.

2. Kentucky Revised Statutes (KRS) 218A.1432, 502.020, a Class B felony.

3. KRS 218A.1415, 502.020, a Class D felony.

4. KRS 218A.1416, a Class A misdemeanor.

5. KRS 218A.500(2), 502.020, a Class A misdemeanor.

6. Lindsey was also charged under KRS 532.080 with being a persistent felony offender in the second degree but that charge was dismissed without prejudice.

7. Pseudoephedrine is contained in over-the-counter allergy medications and is also an ingredient used in manufacturing methamphetamine.

wards (Detective Edwards) could see multiple packages of pseudoephedrine in plain view in the car. We have included details about Rountree's conviction because Lindsey raises the same issues in this appeal. In the interest of judicial economy and consistency, we adopt the facts and analysis contained in *Rountree.*

On August 28, 2005, at approximately 8:00 pm, Mark Rountree purchased two packages of over-the-counter allergy medication containing pseudoephedrine from Walgreens. Before the purchase was complete, Rountree was required to present his drivers [sic] license and sign a Kentucky narcotics log. Immediately after Rountree bought his allergy pills, another man attempted to purchase an unknown quantity of similar allergy medication also containing pseudoephedrine. However, the other man did not have a driver's license so Walgreens refused the sale.

After Rountree left the pharmacy, a Walgreens employee contacted the Elizabethtown Police Department and reported that two men had attempted to purchase pseudoephedrine, one successfully and the other unsuccessfully due to lack of a driver's license. The quantity of the successful purchase was reported to be 96 pills containing 5.7 grams of pseudoephedrine.[8] Kentucky law prohibits the purchase of more than 9 grams of pseudoephedrine within 30 days. KRS 218A.1437. In addition to Kentucky state law, at the time of the purchase Walgreens policy prohibited sale of allergy pills containing a total of 6 grams or more of pseudoephedrine at one time. Rountree's purchase was within the legal pseudoephedrine quantity limit and within Walgreens policy limit.

On being contacted by Walgreens, the Elizabethtown Police conducted a record check on Rountree based upon information contained in the [drivers'] license record and the narcotics log. From the information search, the police learned that Rountree drove a maroon Dodge that was registered in Hart County, and they began searching for Rountree at various pharmacies in Elizabethtown. While searching for Rountree at Walmart, Detective Billy Edwards located a maroon Dodge Intrepid automobile. On confirming that it was registered to Rountree, Detective Edwards observed Rountree leave Walmart, circle around the parking lot and adjust his windshield wipers. Detective Edwards then observed another man, later identified as Jon [sic] Lindsay [sic], enter Rountree's automobile. Detective Edwards followed as Rountree and Lindsey drove out of the parking lot, but Edwards did not know whether Rountree or Lindsay [sic] had purchased allergy medication or anything else at Walmart.

The police followed Rountree onto the U.S. 31–W Bypass, where they initiated a traffic stop. Upon approaching the automobile, the police questioned Rountree about the pseudoephedrine he had purchased at Walgreens. Rountree admitted to the police that he had also purchased pseudoephedrine from other pharmacies and that he used methamphetamine. While talking with Rountree, Detective Edwards observed multiple packages of allergy pills in the car. Upon seeing the pills, the police officers searched the automobile and the search revealed numerous allergy pills containing a total of 94 grams of pseudoephedrine, lithium batteries, solvents used in manufacturing methamphetamine, receipts detailing pseudoephedrine purchases from Glasgow and Ohio, and re-

---

8. Lindsey attempted to purchase the same amount. (footnote added).

ceipts detailing purchases of piping and a funnel. Police also searched a green eye glasses case [9] inside the automobile which was found to contain hydrocodone, aluminum foil, and a small bag of a substance later identified as methamphetamine. Based upon the evidence seized Rountree [and Lindsey were] arrested.

Following his October 28, 2005, indictment, a hearing was held on Rountree's motion to suppress evidence seized during the search of his automobile. Rountree claimed that both the initial stop and the subsequent search of the automobile were unlawful and that the evidence seized had to be suppressed. The trial court denied Rountree's motion to suppress, explaining[:]

> It is the finding of this Court based on the fact that Rountree had purchased the maximum amount of pseudoephedrine allowed by the Walgreens pharmacy and that his passenger had also attempted to purchase pseudoephedrine at the same pharmacy but had been turned down because of lack of identification that an articulable suspicion did exist for the stop in this case.

*Rountree*, Slip Op. at *1–2 (internal footnotes omitted).

Lindsey did not join Rountree's motion initially because at the time the motion was filed and subsequently denied, Lindsey had no standing to challenge the traffic stop of Rountree's vehicle that led to his arrest because he was merely a passenger. However, while the charges were pending against Lindsey, the United States Supreme Court rendered *Brendlin v. California*, 551 U.S. 249, 252, 127 S.Ct. 2400, 2404, 168 L.Ed.2d 132 (2007), in which it made clear a passenger in a vehicle has standing to challenge the constitutionality of a traffic stop but not a subsequent search of the vehicle. In the wake of *Brendlin*, Lindsey filed his own motion to suppress in August 2007, mirroring Rountree's arguments. Following a suppression hearing, at which the parties agreed the evidence would be the same as that previously offered during Rountree's hearing, the trial court adopted its prior analysis and simply replaced the name "Rountree" with "Lindsey" in its order denying the motion to suppress on the same grounds. Thereafter, Lindsey entered a conditional guilty plea, reserving the right to challenge the stop and the search of Rountree's vehicle. This appeal followed.

The Commonwealth argues Lindsey cannot relitigate the facts and issues already decided in *Rountree*. We agree. In the case *sub judice*, we consider facts and issues identical to those decided in *Rountree*. Societal norms regarding the constitutionality of traffic stops and warrantless searches have not significantly changed in the brief time since *Rountree* was rendered and discretionary review was denied. Thus, the analysis and the result are the same for Lindsey.

In light of Lindsey's concerns that aspects of the record may have been overlooked by a prior panel of this Court, we have reviewed the record thoroughly and despite Lindsey's argument that the *Rountree* court glossed over or ignored the video footage of the traffic stop, we agree with that court's conclusion because it was based on sound legal principles and a correct application of Kentucky case law to the facts. Although Lindsey believes the *Rountree* opinion is incorrect, it is now final and, absent a compelling reason to do otherwise, we will follow its precedent since Lindsey and Rountree acted in concert.

---

9. The case was later identified as belonging to Lindsey. (footnote added).

As a reviewing court, we affirm those trial court findings of fact that are supported by substantial evidence, RCr 9.78, and give deference to those conclusions drawn by the trial court that are not clearly erroneous. *Commonwealth v. Whitmore*, 92 S.W.3d 76, 79 (Ky.2002). Trial court findings supported by substantial evidence are reviewed *de novo* to determine if the trial court has correctly applied the law to the facts. *Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky.App.2002).

## THE STOP

█ Lindsey argues the police officers lacked reasonable suspicion to make the initial traffic stop because they could not have known Lindsey was the same man referred to by the Walgreens employee in the phone call made to Detective Chris Thompson (Detective Thompson). We disagree for three reasons.

First, it was not unreasonable for police officers to assume Lindsey was the same man referenced by the Walgreens employee as being in Rountree's company. A Walgreens employee informed Detective Thompson that one man bought, and a second man attempted to buy, pseudoephedrine. Detective Thompson knew Rountree was the purchaser based on the pharmacy's narcotics log, but he had no information about the man who had failed in his attempt to purchase the drug due to his lack of identification. Upon locating the car registered to Rountree in a Walmart parking lot, two detectives observed Rountree physically leave the store, enter the car, start the engine, and remain in the parking lot until a second individual, Lindsey, exited the store and got into the car. Because Walgreens had reported in a single phone call that two individuals had been in their pharmacy, the detectives reasonably believed the unknown individual reported by Walgreens and Rountree's companion at Walmart (Lindsey) were one and the same.

█ Second, Detectives Edwards and Thompson, along with Officer Billy Boling (Officer Boling), had reasonable suspicion to stop Rountree's car. Police may stop a car when they have specific and articulable facts to justify the stop under circumstances requiring immediate action. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *Commonwealth v. Marr*, 250 S.W.3d 624, 627 (Ky.2008). Police must consider the totality of the circumstances in determining the probability that a stop is justified. *U.S. v. Cortez*, 449 U.S. 411, 417–418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *Henson v. Commonwealth*, 245 S.W.3d 745, 748 (Ky.2008).

Third, even though Rountree purchased a permissible amount of pseudoephedrine under both Kentucky law and Walgreens policy, his purchase exceeded the amount of medication one individual would take within a week based on the recommended dosage instructions included on the packaging. Additionally, a second individual, believed to be connected to Rountree, had also attempted to purchase more than a week's supply of the drug. From prior investigation and experience, officers knew individuals involved in the manufacture of methamphetamine often drove to Elizabethtown from surrounding counties to purchase the supplies needed to produce methamphetamine. In the interest of preventing the manufacture of methamphetamine, they needed to act quickly rather than wait to obtain a warrant. Although the detectives could not be certain Rountree and his companion were attempting to purchase large quantities of pseudoephedrine tó manufacture methamphetamine, when considering all of the circumstances, we are convinced the stop was justified under *Terry*. Thus, in conformity with the

*Rountree* opinion, there was no constitutional violation.

## THE SEARCH

Lindsey also argues that the warrantless search of Rountree's car violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. Specifically, he argues that Detective Edwards' testimony conflicts with the video footage of the stop and claims that the inconsistency proves the officers lacked probable cause to search the car. Lindsey further contends that Detective Edwards could not have seen any contraband in "plain view" because Officer Boling had the first opportunity to see inside the vehicle, and he testified that nothing in the car piqued his interest.

■ To challenge the warrantless search of Rountree's car, Lindsey must show an infringement of his own Fourth Amendment rights. *Rakas v. Illinois,* 439 U.S. 128, 133, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). While *Brendlin* recognized a passenger's standing to challenge a *stop* of the vehicle in which he is riding, it remains the law that a passenger does not have standing to challenge the *search* of a car in which he is riding unless he has some property interest in the car. *Rakas,* 439 U.S. at 134, 99 S.Ct. at 425; *Commonwealth v. Fox,* 48 S.W.3d 24, 28 (Ky.2001). Lindsey lacked standing to challenge the search of Rountree's car as he asserted no property interest in the car.

■ Lindsey's argument that the officers lacked probable cause to conduct the search is distinct from that of Rountree due to his lack of standing. However, had Lindsey had standing, his argument would have failed for the same reasons set forth in *Rountree* because police may conduct a warrantless search of an automobile pro-

vided they have probable cause to believe the vehicle may contain something the law requires them to seize. *Gray v. Commonwealth,* 28 S.W.3d 316, 319 (Ky.App.2000).

In comparing video of the traffic stop to Detective Edwards' testimony, we acknowledge there are discrepancies regarding whether Rountree's confession preceded or followed the search. However, we have reviewed the dashcam footage [10] of the traffic stop thoroughly and are unconvinced the conflicting evidence requires reversal because it is obvious that at least one officer saw something of interest by shining his flashlight into the rear passenger side windows of Rountree's car. Although mentioned by no one, a fourth unnamed officer, dressed in uniform, also appears in the video footage. After the fourth officer shined his flashlight into the rear window of Rountree's car, Detectives Thompson and Edwards followed suit. It was not until *after* the three officers had peered into the rear of the car that Rountree was removed from the vehicle and the search occurred.

The holding of *Rountree* does not run afoul of *Arizona v. Gant,* —— U.S. ——, 129 S.Ct. 1710, 1723–24, 173 L.Ed.2d 485 (2009), in which the United States Supreme Court recently clarified two points about the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement. First, the doctrine of *stare decisis* does not require blind adherence to a long-held, albeit erroneous, interpretation of case law. *Gant,* 129 S.Ct. at 1723. Second, *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), "does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle." *Gant,* 129 S.Ct. at 1723. Stated in the affirmative,

---

**10.** There was no audio accompanying the     dashcam recording.

Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

*Id.,* at 1723–24. The result reached in *Rountree* is consistent with the holding of *Gant* since "evidence of the offense of arrest," drug paraphernalia and multiple boxes of pseudoephedrine, were plainly visible inside the vehicle and Rountree and Lindsey were arrested on various drug charges. *Gant* is factually distinguishable since police searched Gant's vehicle and discovered cocaine in a jacket pocket only *after* arresting him for driving on a suspended license, handcuffing him, and locking him in the back of a police cruiser. Under these circumstances, the search-incident-to-arrest exception did not justify a warrantless search because Gant could not have accessed his car to retrieve a weapon or evidence from the vehicle, *and* a search of the vehicle would not yield evidence of Gant having driven on a suspended license. In light of these factual distinctions, we see no compelling reason not to reach the same conclusion we reached in *Rountree.*

When looking at the totality of the circumstances, including the information obtained from the Walgreens employee, the observations made in the Walmart parking lot, and the items of interest in Rountree's car observed by at least three officers, it is clear that probable cause existed. Thus, the trial court's ruling, as stated in *Rountree,* is supported by substantial evidence, and its application of the law to the facts is correct.

While the testimony of Detectives Edwards and Thompson may conflict with the video footage of the traffic stop, we are not authorized to determine which evidence deserves more weight. Evaluating the credibility and weight of the evidence is the sole province of the trial court judge as the fact finder. *Bristow v. Taul,* 310 Ky. 82, 85, 219 S.W.2d 641, 642 (1949). Consistent with *Rountree,* we hold that the officers had both probable cause and exigent circumstances to conduct the warrantless search. Therefore, no error occurred.

For the foregoing reasons, the judgment of the Hardin Circuit Court is affirmed.

ALL CONCUR.