**Eric Bryan HINCHEY, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2012–CA–000561–MR.

Court of Appeals of Kentucky.

May 2, 2014.

Karen Shuff Maurer, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for appellant.

J. Hays Lawson, Assistant Attorney General, Frankfort, KY, Jack Conway, Attorney General of Kentucky, for appellee.

Before CLAYTON, MAZE, and NICKELL, Judges.

*OPINION*

MAZE, Judge:

Eric Hinchey appeals from a judgment of conviction by the Graves Circuit Court following a jury trial. He argues that the trial court erred by denying his motion to suppress evidence seized from his vehicle following his arrest, and by denying his motion to dismiss at least one of the charges of possession of a handgun by a convicted felon. On the first issue, we agree with the trial court that the items were properly seized under a valid exception to the warrant requirement. But on the second issue, we conclude that double jeopardy and KRS 505.020(1)(c) prohibit Hinchey's conviction for multiple counts of possession of a handgun by a convicted

felon which arise from a single course of conduct. Hence, we affirm in part, reverse in part, and remand for entry of a new judgment and sentence.

On August 24, 2010, a Graves County grand jury returned an indictment charging Hinchey with two counts of first-degree wanton endangerment, two counts of possession of a handgun by a convicted felon, and one count each of fleeing or evading police, resisting arrest, criminal trespassing, and being a persistent felony offender in the first degree (PFO I).[1] Prior to trial, Hinchey filed a motion to suppress evidence seized from the warrantless search of his vehicle following his arrest. On February 3, 2011, the trial court conducted a hearing on the motion at which the following testimony was presented.

On July 10, 2010, Mayfield Police officers responded to a reported disturbance caused by Hinchey at the home of his parents. When the police arrived, Hinchey was yelling at the people in the house. Upon seeing the police, Hinchey jumped in his car and sped off, nearly hitting two officers. His vehicle struck a curb and police heard a loud "bang" which sounded like a shot.

Police officers pursued Hinchey for several blocks at high speed. At several points, he appeared to drop out of sight, as if he were reaching for something. Finally, Hinchey pulled into a driveway of a house owned by his aunt. He got out of the car holding a large, fixed-blade knife. The police ordered Hinchey to the ground. When Hinchey refused, two officers used Tasers to attempt to subdue him. Hinchey fell to the ground and dropped the knife. However, he still struggled with the officers as they arrested him and placed him in the police car.

Immediately following the arrest, the officers shone a light into the car. They saw a firearm, ammunition, and knives plainly visible in the car. They also observed a two-liter bottle which was partially deflated in a manner consistent with methamphetamine manufacturing. Upon searching the vehicle, the police recovered two firearms, loose ammunition, several knives, methamphetamine and two two-liter bottles. The vehicle was then towed from the scene.

After reviewing the evidence, the trial court found that several of the items were in plain view and that all of the items were seized through a proper inventory search. The matter then proceeded to trial. The court dismissed the trespassing and PFO I charges prior to trial. The trial court also severed the two handgun-possession charges, which were tried separately.

Following the first jury trial in September 2011, Hinchey was found guilty of second-degree wanton endangerment, first-degree wanton endangerment, fleeing and evading police, and resisting arrest. Following the second jury trial in January 2012, Hinchey was found guilty of two counts of possession of a handgun by a convicted felon. In accord with the jury's verdict, the trial court fixed Hinchey's sentence at a total of 12 years' imprisonment. The trial court further directed that the sentence in the related indictment run con-

---

1. On October 10, 2010, another grand jury returned a second indictment (No. 10–CR–267) charging Hinchey with manufacturing methamphetamine, possession of methamphetamine, possession of drug paraphernalia, first-degree wanton endangerment, carrying a concealed deadly weapon, driving under the influence (DUI), first offense, and being a PFO I. The charges in the second indictment arose out of the same acts as the first and were heard together. The jury ultimately convicted Hinchey on the charges of manufacturing methamphetamine, possession of drug paraphernalia, and carrying a concealed deadly weapon.

secutively for a total of 15 years. This appeal followed.

Hinchey first argues that the search of his vehicle did not fall within any exception to the warrant requirement. Consequently, he asserts that the trial court erred by denying his motion to suppress all of evidence seized as a result of that search.[2] Kentucky Rules of Criminal Procedure (RCr) 9.78 sets out the procedure for conducting suppression hearings and establishes the standard of appellate review of the determination of the trial court. Our standard of review of a circuit court's decision on a suppression motion following a hearing is twofold. "First, the factual findings of the court are conclusive if they are supported by substantial evidence[;]" and second, this Court conducts "a *de novo* review to determine whether the [trial] court's decision is correct as a matter of law." *Stewart v. Commonwealth*, 44 S.W.3d 376, 380 (Ky.App.2001) *citing Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky.1998).

■ Hinchey challenges the warrantless search of his vehicle and the evidence seized as a result of that search. Warrantless searches are *"per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnotes omitted). The Commonwealth relies on two exceptions to the warrant requirement: search incident to arrest and inventory search. We conclude that the search was proper under each of these exceptions.

In *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), the United States Supreme Court clarified the search incident to arrest exception as it applies to vehicle searches. The Court held that a search incident to arrest can be justified only if the arrestee was unrestrained or if it was reasonable for the arresting officers to believe that evidence relevant to the crime of arrest might be accessed or destroyed by the arrestee. *Id.* at 343–44, 129 S.Ct. at 1719. *See also Davis v. United States*, —— U.S. ——, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), and *Rose v. Commonwealth*, 322 S.W.3d 76, 79 (Ky.2010). Hinchey points out that he had already been restrained, arrested and placed in the police car at the time the police conducted the warrantless search of this vehicle. Consequently, he maintains that the police officers had no basis for a search of the vehicle incident to his arrest.

We agree with Hinchey that the first *Gant* exception was not met in this case. However, we conclude that the second *Gant* exception does apply. Hinchey used his vehicle to flee from the police. In addition, the police heard a sound like a shot coming from the vehicle as he fled his parents' house. He was also seen reaching for something while he was driving. Based on the totality of the circumstances, the officers had a reasonable basis to conclude that the vehicle contained evidence of the crime for which Hinchey was arrested. Furthermore, the officers observed several of the items in plain view through the windows of the car. *Commonwealth v. Hatcher*, 199 S.W.3d 124, 126 (Ky.2006). Since the weapons were unsecured and in an open car, the police had a reasonable

---

**2.** Hinchey filed the motion seeking to suppress all of the evidence seized from the search of his vehicle as it related to the charges in both indictments. Although Hinchey does not directly raise the issues relating to the items prosecuted under Indictment No.

10–CR–267, the same search produced the items prosecuted under Indictment No. 10–CR–198. Since the record has been certified in both cases, we presume that Hinchey appeals from the suppression issues relating to both indictments.

basis to believe that the evidence could be accessed or destroyed.

■ In addition, the officers testified that they conducted an inventory search of the vehicle prior to it being seized and towed. An inventory search must be one conducted for purposes other than investigation and be based upon a standardized policy, which provides standardized criteria to restrict or eliminate an officer's discretion as to whether and what to search. *Clark v. Commonwealth*, 868 S.W.2d 101, 106 (Ky.App.1993) *overruled on other grounds by Henry v. Commonwealth*, 275 S.W.3d 194 (Ky.2008). *See also Florida v. Wells*, 495 U.S. 1, 3–4, 110 S.Ct. 1632, 1634–35, 109 L.Ed.2d 1, 6 (1990). Two officers testified that they intended to tow Hinchey's car even before they saw the weapons due to the nature of the charges. Furthermore, both officers testified that it was the policy of the Mayfield Police Department to conduct an inventory search any time that a vehicle was seized. Although Hinchey questions whether this was a consistently-applied policy, the trial court was convinced that there was ample cause to seize the vehicle and that the police properly conducted a proper inventory search. This finding was supported by ample evidence and will not be disturbed.

Hinchey next argues that the trial court erred by denying his motion to dismiss at least one of the handgun-possession charges. He contends that his possession of two firearms constitutes a single transaction under KRS 527.040. Therefore, he argues that his conviction for each firearm violates his rights against double jeopardy.

Under both the U.S. Constitution and the Kentucky Constitution, double jeopardy prohibits multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), and *Hourigan v. Common-*

*wealth*, 962 S.W.2d 860, 862 (Ky.1998). Furthermore, where the offense is designed to prohibit a continuing course of conduct and the defendant's course of conduct was uninterrupted by legal process, a defendant may not be convicted of more than one offense unless the law expressly provides that specific periods of such conduct constitute separate offenses. KRS 505.020(1)(c).

■ In pertinent part, KRS 527.040 provides that a person is guilty of possession of a firearm by a convicted felon "when he possesses, manufactures, or transports a firearm when he has been convicted of a felony, ..." The statute prohibits convicted felons from possessing any firearms. *Posey v. Commonwealth*, 185 S.W.3d 170, 176 (Ky.2006); *Crowder v. Commonwealth*, 23 S.W.3d 225, 227 (Ky. App.1999). Since the statute does not explicitly designate separate offenses for each firearm found in the possession of a convicted felon, Hinchey's possession of two firearms in the vehicle constitutes a single course of conduct. Therefore, we conclude that one of his convictions must be set aside. However, since the trial court ran his two sentences concurrently, setting aside one of those convictions will not affect his total sentence.

Accordingly, the judgment of conviction by the Graves Circuit Court is affirmed in part, reversed in part, and remanded for entry of a new judgment and sentence based upon a conviction for one count of possession of a handgun by a convicted felon.

ALL CONCUR.