RENDERED: JUNE 7, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0779-MR

COMMONWEALTH OF KENTUCKY                                         APPELLANT

APPEAL FROM MCCRACKEN FAMILY COURT
v.            HONORABLE WILLIAM ANTHONY KITCHEN, JUDGE
ACTION NO. 23-CR-00080

JOSE MANUEL SOTO ADAME                                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ECKERLE, KAREM, AND LAMBERT, JUDGES.

KAREM, JUDGE: The Commonwealth of Kentucky appeals from a McCracken

Circuit Court order granting a motion to suppress brought by Jose Manuel Soto

Adame. The Commonwealth argues that the circuit court applied the wrong legal

standard in suppressing evidence recovered in a warrantless search of Soto

Adame's truck. Upon careful review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

After not hearing from him all day, Soto Adame's wife called the Paducah Police Department to request a welfare check. She was worried that he was drunk and could possibly harm himself or others. She had pinged his phone and located it at a gas station off Exit 3 in Paducah.

Officer Logan Barrow went to the gas station and found Soto Adame sitting in his truck. Officer Noah Willett arrived at about the same time. While speaking with Soto Adame to make sure he was okay, Officer Barrow noticed open alcohol containers on the seat with him. Officer Barrow asked Soto Adame for identification. Soto Adame produced a document that appeared to be a Florida driver's license. When Officer Barrow went back to his cruiser and checked the license, he discovered it was invalid and that Soto Adame had an expired Florida license with a different number. Officer Barrow asked Soto Adame to step out of his vehicle and asked him about the license. Soto Adame admitted it was fake and explained he had purchased it in the area because he needed it to obtain employment. He stated he could not renew his license because his permanent resident card had expired. He denied having any other forged documents in his possession and gave the police an authentic Social Security card. Officer Barrow decided to search Soto Adame's truck for other evidence of forged materials such as additional I.D. cards, forged documents, templates, or printers.

Officer Barrow did not handcuff Soto Adame, who stood talking with Officer Willett in front of Barrow's car while Barrow searched his truck. Barrow testified that he looked first at the driver's side door compartment because it was common for documents to be kept there. He found a glass pipe with suspected methamphetamine residue. The officers handcuffed Soto Adame and put him in the back of Officer Barrow's cruiser. Officer Willett testified that at that point, Soto Adame was under arrest on the charge of first-degree possession of a controlled substance, methamphetamine. After the arrest, the search of the vehicle continued. The officers found a bag containing a black digital scale with suspected methamphetamine residue and a small baggy containing suspected methamphetamine.

Soto Adame was charged with third-degree criminal possession of a forged instrument, first-degree possession of a controlled substance (methamphetamine), and possession of drug paraphernalia. He filed a motion to suppress, arguing that the warrantless search of his truck was unlawful because the police lacked probable cause to believe any further evidence related to the alleged crime of criminal possession of a forged instrument would be found within the vehicle. After conducting a hearing, the circuit court entered an order granting the motion. This appeal by the Commonwealth followed.

## STANDARD OF REVIEW

"Because the present appeal involves a warrantless search, we review the trial court's: (1) findings of fact for clear error and (2) determinations of reasonable suspicion and probable cause *de novo*." *Gasaway v. Commonwealth*, 671 S.W.3d 298, 316 (Ky. 2023) (citations omitted).

## ANALYSIS

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "All warrantless searches are unreasonable, per se, under the Fourth Amendment unless an established exception applies." *Gasaway*, 671 S.W.3d at 316. "The Commonwealth bears the burden of establishing the constitutional validity of a warrantless search." *Id.* (internal quotation marks omitted) (quoting *Commonwealth v. Conner*, 636 S.W.3d 464, 471 (Ky. 2021)). "Each of the exceptions to the warrant requirement is 'narrow and well-delineated'" and "the Commonwealth must satisfy every element of the claimed exception." *Id.* (citations omitted).

The longstanding "automobile exception" permits police to search a vehicle without a warrant if it is readily mobile and probable cause exists to believe it contains contraband or evidence of a crime. *Hedgepath v. Commonwealth*, 441 S.W.3d 119, 127-28 (Ky. 2014) (citing *Carroll v. United*

-4-

*States*, 267 U.S. 132, 153, 45 S. Ct. 280, 285, 69 L. Ed. 543 (1925); *California v. Acevedo*, 500 U.S. 565, 569, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991); *Maryland v. Dyson*, 527 U.S. 465, 466-67, 119 S. Ct. 2013, 2014, 144 L. Ed. 2d 442 (1999)).

More recently, an exception to the warrant requirement was recognized for searches incident to the arrest of a vehicle's recent occupant. *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). Under *Gant*, the police may conduct such a search only when (1) "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search[,]" or (2) when "it is reasonable to believe [that] evidence relevant to the crime of arrest might be found in the vehicle." *Id.* at 343, 129 S. Ct. at 1719. The parties agree that only the second prong is at issue here because Soto Adame was not within reaching distance of his truck when Officer Barrow conducted the search.

In its order granting the motion to suppress, the circuit court set forth the *Gant* test for vehicular searches incident to arrest and held that there was insufficient evidence to support a warrantless search of Soto Adame's truck for other forged documents or items used in creating the forged Florida I.D. card. The court found that Soto Adame "provided the card to officers when asked for identification and admitted to purchasing the card for employment purposes. Although he knew it was fake, defendant stated it was 'the only thing he had' to

give the officers when asked for identification." The court concluded that "[t]here was **no probable cause** to believe any other forged documents were in the vehicle," and it was "also highly unlikely that any materials used to manufacture the forged ID would be located in the vehicle." (Emphasis added.)

The Commonwealth argues that the trial court erred in applying the "probable cause" standard because the second prong of *Gant* mandates a standard of "reasonable belief" for vehicle searches incident to arrest. The Commonwealth further contends that the *Gant* standard is unclear and confusing but is nonetheless a lower standard than probable cause. Under this lower standard, it argues, the search was proper.

As set forth above, *Gant* permits such a warrantless vehicular search incident to arrest if it is "reasonable to believe the vehicle contains evidence of the offense of arrest." When Kentucky formally adopted *Gant* in *Rose v. Commonwealth*, the Kentucky Supreme Court described the rule as allowing an officer to "search a vehicle even when the arrestee is secured if he has a reasonable suspicion that the vehicle harbors evidence of the *crime of arrest*." *Rose v. Commonwealth*, 322 S.W.3d 76, 80 (Ky. 2010). The *Rose* standard was recently restated verbatim by the Kentucky Supreme Court. *See Gasaway*, 671 S.W.3d at 321. Thus, under *Gant* and *Rose*, the standard applicable to the warrantless search of a recent arrestee's vehicle is whether it was "reasonable to believe," or whether

-6-

there was "a reasonable suspicion," that the vehicle contained evidence of the crime of arrest.

Soto Adame has not disputed that he was under arrest at the time Officer Barrow initiated the search of his vehicle, even though Officer Willett testified that Soto Adame was formally arrested only after the discovery of the suspected methamphetamine. Soto Adame agrees that *Gant* is the appropriate standard and also agrees with the Commonwealth that it is a less exacting standard than probable cause. As Colorado's highest court succinctly stated, "[I]n light of the automobile exception, which already provides an exception to the warrant requirement whenever police have probable cause to believe an automobile contains evidence of a crime, . . . a requirement of probable cause in this context would render the entire second prong of the *Gant* search-incident-to-arrest exception superfluous." *Colorado v. Chamberlain*, 229 P.3d 1054, 1057 (Colo. 2010) (citation omitted).

Although the Commonwealth contends that the *Gant* standard is unclear and confusing, numerous jurisdictions have concluded that it is akin to the reasonable suspicion standard required to justify an investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889 (1968). "While the Court [in *Gant*] did not flesh out the reasonable-to-believe standard, a number of appellate courts have concluded that it appears to require a lesser quantum of

suspicion than probable cause, and probably is akin to the reasonable suspicion standard required to justify a *Terry* search." *United States v. Wynn*, 2023 WL 7449849, at *18 (E.D. Ky. Aug. 25, 2023), *report and recommendation adopted*, 2023 WL 6878901 (E.D. Ky. Oct. 18, 2023) (cleaned up). For instance, the federal Court of Appeals for the D.C. Circuit characterized the *Gant* "reasonable to believe" standard as probably akin to the "reasonable suspicion" standard under *Terry*, based on the identical language in *Terry* that a search is permissible if the officer "has *reason to believe* that the suspect is armed and dangerous." *United States v. Vinton*, 594 F.3d 14, 25 (D.C. Cir. 2010) (emphasis added). The Court concluded that under *Gant*, "the officer's assessment of the likelihood that there will be relevant evidence inside the car must be based on more than 'a mere hunch,' but "falls considerably short of [needing to] satisfy[] a preponderance of the evidence standard." *Id*. (quoting *United States v. Arvizu*, 534 U.S. 266, 274, 122 S. Ct. 744, 751, 151 L. Ed. 2d 740 (2002)).

Although the circuit court used the more stringent probable cause standard applicable to the general automobile exception to assess the constitutionality of the search, its order denying the motion to suppress need not be reversed because we "may affirm a lower court for any reason supported by the record." *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009) (citation omitted). Even under the laxer "reasonable suspicion" or "reasonable

belief" *Gant* standard, the search of Soto Adame's vehicle does not pass constitutional muster. It was simply not reasonable to believe or suspect, on the basis of the fake Florida license alone, that Soto Adame had equipment or supplies for manufacturing counterfeit licenses or other documents in his truck. As the circuit court found, Soto Adame provided a reasonable explanation for possessing the fake I.D. and he produced a legitimate Social Security card. There was absolutely no evidence to suggest he possessed or was manufacturing additional counterfeit identity documents. The fake license, with nothing more, was insufficient evidence to create a reasonable belief to support the warrantless search of Soto Adame's vehicle.

## CONCLUSION

For the foregoing reasons, the order denying the motion to suppress is affirmed.

LAMBERT, JUDGE, CONCURS.

ECKERLE, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

ECKERLE, JUDGE, DISSENTING: Respectfully, I must dissent.

The central issue in this case is whether an officer's search of a car door pocket solely for additional evidence of the use or manufacture of forged documents was lawful where officers, having been called lawfully to Jose Soto Adame ("Defendant") for a welfare check and having encountered him with open

alcoholic beverages in his car, were confronted by him with demonstrably false statements and a forged driver's license. Because both federal and state law unequivocally authorizes such searches, this case should be reversed and remanded with instructions to deny the motion to suppress.

In every suppression hearing addressing the reasonableness of a search, the Trial Judge shall always begin the analysis with the basic rule that all warrantless searches are *per se* unreasonable under the Fourth Amendment to the United States Constitution – subject only to a few specifically established and well-delineated exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576 (1967). A search incident to arrest is one of those exceptions. *Weeks v. United States*, 232 U.S. 383, 392, 34 S. Ct. 341, 344, 58 L. Ed. 652 (1914), *overruled on other grounds by Elkins v. United States*, 364 U.S. 206, 80 S. Ct. 1437, 4 L. Ed. 2d 1669 (1960).

The United States Supreme Court has narrowed the definition of "search incident to arrest" to the arrestee's person and the area "within his immediate control." *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 2040, 23 L. Ed. 2d 685 (1969). The rationale behind this limited exception to the warrant requirement is officer safety and evidence preservation. *Id.* Specifically addressing the context of arrests of occupants of motor vehicles, the Court previously held that the entire passenger compartment of the vehicle and any

containers therein may be lawfully searched because that area is generally within an arrestee's reach and thus within his immediate control. *New York vs. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981).

Such was the law for 40 years, until *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), which held that no valid search could occur where, *inter alia*, a defendant was arrested for offenses for which his vehicle could yield no evidence. Under *Gant*, if the search is for evidence, circumstances unique to the automobile context justify a search when it is reasonable to believe that evidence of the arresting offense might be found in the vehicle.

The Kentucky Supreme Court first addressed the *Gant* issue and upheld the search in *McCloud v. Commonwealth*, 286 S.W.3d 780 (Ky. 2009). There, the police saw the defendant in a vehicle holding narcotics, arrested and searched him, and discovered more cocaine on his person. Officers then searched the vehicle and found a loaded gun, scales, cocaine, marijuana, and a safe with $6,450.00. *Id.* at 783. Our Supreme Court held that the evidence should not be suppressed because the officers had a reasonable belief that the vehicle contained evidence of the arresting charges for Trafficking in a Controlled Substance I (cocaine), Trafficking in Marijuana, and Illegal Possession of Drug Paraphernalia. *Id.* at 785.

This law has remained unchanged and binding on all Kentucky Courts. Many cases involve narcotics. *See, e.g.*, *Lindsey v. Commonwealth*, 306 S.W.3d 522 (Ky. App. 2009) (no suppression where evidence of the arresting offense for narcotics was plainly visible inside the vehicle, and defendants were arrested on drug charges); *Robbins v. Commonwealth*, 336 S.W.3d 60 (Ky. 2011) (because evidence relevant to the arresting drug offenses could reasonably be expected to be found in the vehicle, search valid where defendant with an outstanding bench warrant for failure to appear for sentencing in a drug trafficking conviction ran from his vehicle and tossed narcotics; officers arrested him and found cash; subsequent search of the vehicle yielded cocaine); *Johnson v. Commonwealth*, No. 2010-CA-002037-MR, 2012 WL 1573517 (Ky. App. May 4, 2012)[1] (search of vehicle permissible where a controlled buy of narcotics yielded evidence of narcotics and police arrested and searched of the vehicle located more narcotics because its purpose was to secure additional evidence relating to the arrest on drug charges); *Arnold v. Commonwealth*, No. 2008-CA-001372-MR, 2009 WL 2475354 (Ky. App. Aug. 14, 2009) (then-Judge now-Justice Keller, with Judges Clayton and Lambert concurring, found no suppression warranted where a reliable, confidential informant caused police to record a defendant promising to

---

[1] According to Kentucky's Rules of Appellate Procedure ("RAP"), unpublished cases are not binding. These unpublished cases are solely referenced here to show commonality of appellate cases on the issue. RAP 41.

deliver a specific quantity of cocaine for a specific price in a specific vehicle and the arrest of the driver yielded cocaine because the police officer reasonably believed that the vehicle contained cocaine, the evidence of the arresting offense); *Commonwealth v. Elliott*, 322 S.W.3d 106 (Ky. App. 2010) (where defendant smelled strongly of alcohol, failed the field sobriety test, and was arrested for Driving Under the Influence of an Intoxicant, officer observed white powder on the console, seat, and gear shift, as well as clear, torn baggies on the seat, all in plain view, the search of the vehicle revealing drugs and drug paraphernalia, that search was valid because officer had a reasonable belief that evidence of the arresting offense, the intoxicant, was in the vehicle).

And many cases apply the exception for evidence-of-the-arresting-offense when the crimes do not involve drugs. *See, e.g.*, *Owens v. Commonwealth*, 291 S.W.3d 704 (Ky. 2009) (operating on a suspended license); *Mucker v. Commonwealth*, No. 2010-SC-000009-MR, 2011 WL 1103359 (Ky. Mar. 24, 2011) (carrying a concealed deadly weapon); *Hinchey v. Commonwealth*, 432 S.W.3d 710, 713 (Ky. App. 2014) (first-degree wanton endangerment, fleeing or evading police, resisting arrest, and criminal trespassing).

On the other hand, cases where Courts have decided to suppress evidence of the arresting offense have done so where the officers cited other reasons to support their searches or stated that they were performing merely

-13-

general investigations for other evidence. *See, e.g.*, *Rose v. Commonwealth*, 322 S.W.3d 76 (Ky. 2010) (the exception for vehicles harboring evidence of the crime of arrest did not apply where officers saw defendant, who was wanted on two outstanding, arrest warrants regarding stolen checks, arrested her and searched the car finding stolen checks because the deputy testified directly that he did not search the vehicle for the purpose of obtaining evidence relating to the two warrants); *Gasaway v. Commonwealth*, 671 S.W.3d 298, 321 (Ky. 2023) (noting a search incident to arrest must not be "generally investigative" but, rather, "a specific search for evidence of the crime of arrest"); *Turner v. Commonwealth*, No. 2009-CA-002141-MR, 2011 WL 3516298 (Ky. App. Jan. 6, 2011)[2] (where no evidence regarding the arresting offense of failure to have an operator's license was the subject of the search of a trunk that uncovered drugs, the evidence should be suppressed; Court did not address uncharged issue of defendant's criminal, visible, open container of alcohol in the car that could have allowed valid search for other open containers).

In an unpublished case analogous to this one, the Kentucky Supreme Court declined suppression. In *Mucker*, *supra*, officers responded to calls regarding a fight in the parking lot involving a gun, and an identification of defendant as the one with the gun. They detained the defendant and found a

---

[2] This case is likewise not cited as binding authority, but rather merely as illustrative. RAP 41.

loaded gun on his person. They arrested him and performed a license plate check, which revealed the defendant owned the car. They then conducted a search, during which they discovered a modified, sawed-off shotgun, a holster, shells, and a loaded magazine fitting the handgun found previously on the defendant. *Id.* at *1. The Supreme Court held that the search was valid because it sought evidence relevant to the crime of Carrying a Concealed Deadly Weapon, for which the defendant had been arrested. Mucker had argued that no additional evidence could reasonably be believed to exist in the car for the arresting charge because the Commonwealth had already garnered from his person all of the evidence sufficient to prove the charge. However, in rejecting that argument, the Court noted that it had allowed searches of vehicles for weapons pursuant to *Gant* where drugs had already been located on Defendants that would have supported convictions for narcotics charges. The Court also noted that the search could lead to evidence relevant to the Carrying a Concealed Deadly Weapon charge, for instance where ammunition might be located to refute certain defenses to the charge. Accordingly, the Court affirmed the denial of suppression.

Because the present appeal involves a warrantless search, we review the Trial Court's findings of fact for clear error, but we conduct a *de novo* review of its legal determinations on the motion to suppress. *Gasaway*, 671 S.W.3d at 316 (citing *Commonwealth v. Pride*, 302 S.W.3d 43, 49 (Ky. 2010)). *See also*

*Commonwealth v. Marr*, 250 S.W.3d 624, 626-27 (Ky. 2008) (citing *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky. 1998)). Our review must also be mindful that exceptions to the warrant requirement must be narrowly drawn. *Gasaway*, 671 S.W.3d at 316 (citing *Flippo v. West Virginia*, 528 U.S. 11, 13, 120 S. Ct. 7, 8, 145 L. Ed. 2d 16 (1999)). In this case, it should be noted that the evidence presented by the Commonwealth was uncontroverted; and therefore, we assume that these are the facts upon which the Trial Court based its judgment.

Turning now to those undisputed facts of this case, Defendant was the subject of a welfare check due to his wife's report of his drunkenness and potential danger to himself and others. Officers discovered him at the previously-pinged gas station location, alone, in the driver's side of the vehicle with open, alcoholic beverage containers[3] on the seat with him in the cabin. When they asked him for his operator's license, he produced a counterfeit license as if it were valid. He did not merely fail to produce any license or even tender an expired license, but rather he deliberately volunteered a simulated card that appeared to be legitimate. Officers then asked him to step outside of his truck, but did not handcuff him, and they continued the investigation. Only then, after officers informed Defendant that their investigation determined that the license was invalid, and that Defendant had an expired license in Florida with a different number, did Defendant finally admit

---

[3] Police did not charge Defendant with crimes related to intoxicants.

that he had attempted to pass a fake, manufactured license that he had purchased from another.

Officer Barrow testified that he decided to search Defendant's truck for other evidence of forged materials such as additional identification cards, documents, templates, or printers. He testified that he looked in the driver's side door compartment because in his experience, documents are commonly kept there. To be clear, he averred with particularity that he searched for evidence specifically and solely related to the crime of producing a false identification. Nonetheless, instead of additional forgeries, he discovered a glass smoking pipe with suspected methamphetamine residue in that location. Officers then arrested and handcuffed Defendant. They then continued the search of the rest of the vehicle, which contained more narcotics and paraphernalia. There is absolutely no testimony or other evidence that police were initially searching for evidence other than that of the original, arresting offense, Criminal Possession of a Forged Instrument in the Third Degree, when they happened to discover narcotics leading to additional charges of Possession of a Controlled Substance I (Methamphetamine) and Possession of Drug Paraphernalia.

Upon hearing Defendant's motion to suppress, the Trial Court ruled that Defendant's unsworn statement to officers was significant in that he explained that the forgery was the only document in his possession, and that he needed it to

obtain work.  The Trial Court then concluded that "[t]here was **no probable cause** to believe any other forged documents were in the vehicle," and it was "also highly unlikely that any materials used to manufacture the forged ID would be located in the vehicle."  (Emphasis added.)

The Trial Court did not explain the credibility given to uncorroborated, unsworn, self-serving statements made by a person then known to have already engaged in fraud by his own admission to police officers.  Likewise, the Trial Court did not elaborate the reasons, or cite any caselaw, for using a "probable cause" standard to review the officers' uncontradicted statements.

Controlling precedent does not delineate a standard of probable cause for assessing officers' actions in making vehicle searches under *Gant*.  The majority Opinion does not hold that probable cause is the correct standard either. It uses the lesser standards of "reasonable suspicion" and "reasonable belief," binding terms used by Kentucky Courts.  *See, e.g.*, *Rose*, 322 S.W.3d at 80 ("an officer may search a vehicle even when the arrestee is secured if he has a **reasonable suspicion** that the vehicle harbors evidence of the *crime of arrest* . . . .") (emphasis added and in original), and *Commonwealth v. Bembury*, 677 S.W.3d 385, 394-95 (Ky. 2023) ("police may search an arrestee's vehicle . . . if the officer has a **reasonable belief** that the vehicle may contain evidence of the crime of arrest.") (emphasis added).  Using those lower standards, the majority finds that

-18-

the officers' search of Defendant's vehicle was not reasonable because Defendant himself provided reasons, albeit not under oath and subject to cross-examination, for possessing this contraband. But he only proffered *after* he tried to pass off the forged instrument and *after* officers determined the identification was forged and *after* officers told him as much.

Under the totality of all of these circumstances, Defendant's *ex post facto* explanation serves to bolster the reasonable belief, not destroy it. Defendant admitted to committing the crime. Thus, officers had probable cause to conclude that Defendant committed the criminal act. Now, standing on a solid footing that a crime had been committed, officers reasonably believed they might find additional evidence of forged instruments in the driver's door pocket. Indeed, one Officer admitted he himself kept his own wallet in his driver's door pocket.

Moreover, Defendant's statement that he needed the forged instrument to obtain employment is an admission that he intended to or already had misled or been untruthful to others. Defendant's admissions to deceptive practices, and his prior untruthful statements, should have heightened the need for the officers to search for additional evidence of the charged crime, both for evidence to corroborate what was true and for evidence of other forged instruments.

Regardless, simply proffering a reason to disobey the law does not negate the officers' lawful right to search a vehicle for evidence of the admittedly

broken law. If a defendant in a vehicle admittedly containing narcotics told officers that he needed the narcotics to calm down enough to maintain employment, that excuse would not disallow officers from searching the vehicle for more narcotics, paraphernalia, evidence of trafficking, or even weapons.[4] Likewise, it would not pass muster for a defendant in a car with a gun arrested for carrying a concealed deadly weapon to offer the excuse that he needed the gun for protection. Indeed, a search for ammunition would be appropriate to attempt to counter an argument that the gun was not operable or that he did not own it. Here, evidence of other forged documents or items used to manufacture such documents could be used to thwart Defendant's claims. But pursuant to *Gant*, the inquiry is simply whether there was a reasonable belief that they would discover evidence of the charged offense in their search. In these circumstances, the Officers had a reasonable belief that the driver's door pocket may contain additional forged instruments.

Unlike the officers in *Rose*, who flatly stated that they were not looking for evidence of the arresting offense (and had their evidence suppressed), Officer Barrow clearly testified that such evidence was the only evidence for

---

[4] Notably, guns may be connected to drug activity, and a key factor to their connection to drug activity is their location or proximity to the drug activity or evidence. *See Goben v. Commonwealth*, 503 S.W.3d 890, 918-20 (Ky. 2016) (detailing case law regarding the connection between weapons and substantial narcotics activity). *Compare with Brewer v. Commonwealth*, 206 S.W.3d 343 (Ky. 2006) (holding that the Commonwealth must prove a nexus between firearms and narcotics trafficking for the firearms to be subject to forfeiture).

which he looked.  There is zero evidence that he was looking for drugs or anything else.  In other words, Officer Barrow reasonably articulated a belief that evidence of criminal activity that was the arresting offense might be found in the place where he was searching.  This search is precisely the type that *Gant* and its progeny permit.  It is reasonable to believe that another false identification might be located in the door compartment where documents are kept.  The officer would have been entitled to search the glove box and the console as well, as those compartments also tend to be used to store documents.  Where there is one false document produced from a vehicle, there is likely another; just as when there are some drugs on a driver in a car, there are likely more.  This is the very rationale of the law.

Moreover, Officers charged Defendant with Criminal Possession of a Forged Instrument in the Third Degree, a misdemeanor, which is defined a possession of a known forged instrument "with intent to defraud, deceive or injure another" while "utter[ing] or possess[ing] a forged instrument."  Kentucky Revised Statute (KRS) 516.070.  This statute is broad enough that an officer could be looking for evidence of Defendant's intent to "injure another" as the statute defines the crime.  Indeed, Defendant admitted he was defrauding, deceiving, or injuring another because he was using the forged instrument to obtain employment.

-21-

Perhaps Defendant kept pay stubs or work-related documents in the driver's side door pocket.

The fact that officers did not find any further evidence of forged instruments is a red herring – just as is the argument that the officers had all of the evidence that they needed to charge Defendant with the crime the evidence for which they searched. *Gant* and its progeny have never focused on a result-driven analysis. *See, e.g.*, *Gant*, 556 U.S. 332, 129 S. Ct. 1710, and *McCloud*, 286 S.W.3d 780 (searches for drugs alone discovered guns and more drugs); *Owens*, 291 S.W.3d 704 (search for evidence relating solely to charge of operating on a suspended license yielded drugs and paraphernalia).

Indeed, in *Gant* itself, the arrest was for the crime of driving on a suspended license, an offense for which one would not expect to find any additional evidence of the offense of arrest. And that charge is not as incriminating as the one here. A suspended license is very different than a fake license. The evidence of the former is self-contained – the license itself shows that it is expired. *See, e.g.*, *Gant*, 556 U.S. at 344, 129 S. Ct. at 1719 ("Whereas Belton and Thornton were arrested for drug offenses, Gant was arrested for driving with a suspended license – an offense for which police could not expect to find evidence in the passenger compartment of Gant's car."). A false identification does not itself tell the whole story; in fact, just the opposite, as it opens up a host of questions about

what is true: are there other false documents; what is the real identity of this person; does this person have other aliases or identifications (which would be important for booking, putting into police databases for future incidents, *etc.*); are the other documents the arrestee is giving the officer legitimate; is there additional evidence of this person's real identification in the vehicle; where did the false identification come from, is there evidence in the vehicle of who manufactured this false identification; and is there evidence of others who have been defrauded or injured by Defendant's use of this false identification?

The majority concludes that "[t]he fake license, with nothing more, was insufficient evidence to create a reasonable belief to support the warrantless search of Soto Adame's vehicle." But this conclusion is based on the credibility given to Defendant's ultimate confession at the scene, which was not an evidentiary, sworn statement, that the false identification was only used to secure employment. Taken to its logical conclusion, then, this holding means that whenever any defendant says that there is no additional evidence of criminality in his vehicle, the police cannot search it. In other words, under its ruling, where a defendant is charged with an offense for which there is a reasonable belief that other evidence of the charged offense could be found in the vehicle, and the defendant makes a statement purporting to limit the impact of the charged offense,

then the officers' reasonable belief is destroyed, and police must stop their lawful investigation for additional evidence of the offense of arrest.

This interpretation implicitly overrules existing precedent and creates new law because all binding law, from *Gant* forward, holds that when officers have evidence for an arrest and a reasonable belief that they may find additional evidence of the offense of arrest – with nothing more – they are permitted to search a vehicle for evidence of the arresting offense regardless of a defendant's claim of future innocence as to other crimes. The majority's holding would create chaos for police, lawyers, and Courts, forcing them to delineate separate structures under which officers could search for each particular crime, and perhaps forbidding officers to search for evidence in vehicles relating to certain crimes that were the subject of an arrest. Such is not the state of the current law, and we do not have the authority to up end it.

In light of the foregoing, I must conclude that the Trial Court clearly erred by granting Defendant's motion to suppress the evidence seized from his vehicle following the search incident to arrest. As noted, the Trial Court improperly applied the probable cause standard, rather than the reasonable suspicion/belief standard required by *Gant*. Moreover, I cannot agree with the majority that the evidence presented by the Commonwealth fails to meet *Gant*'s requirements. To the contrary, the undisputed evidence clearly shows that the

officers had a reasonable belief that Defendant's vehicle would contain additional evidence of the crime of Criminal Possession of a Forged Instrument. Therefore, I would reverse the Trial Court's order granting the motion to suppress, and remand with directions to the Trial Court to deny the motion and proceed to the further merits of the charged offenses.

BRIEFS FOR APPELLANT:

Daniel Cameron
Attorney General of Kentucky

Matthew F. Kuhn
Solicitor General

Rachel Wright
Assistant Solicitor General
Frankfort, Kentucky

BRIEF FOR APPELLEE

Kayla Deatherage
Frankfort, Kentucky